## CHRISTOPHER C. ROBINSON

v.

## JANE STOW, Administratrix, et al.

1. CONSTRUCTION OF CONTRACT—*general rules.* While it is not the province of courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such contracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice.

2. The intention of the parties, it is true, must govern, but this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties, and the objects they evidently had in view.

3. SAME—*application of the rule in this case.* So, where the first party paid money for land, and a second party agreed to be at the expense of subdividing it, advertising it, and selling it, and the receipts from sales were first to pay the first party his purchase-money, and afterward be equally divided, and the second party performed his part of the contract, it was held that a clause in the contract, providing for the sale of the lots " as soon as practicable, and thought proper by the parties," did not give one party a right to stop the sales upon his arbitrary whim, but only in good faith, and upon just and reasonable cause.

APPEAL from the Circuit Court of Cook county ; Hon. E. S. WILLIAMS, Judge, presiding.

This was an action of covenant, brought by the administratrix of the estate of David Rattray against Christopher C. Robinson, upon the following agreement :

"Articles of agreement made and entered into between C. C. Robinson of the city of Chicago, county of Cook, and State of Illinois, party of the first part, and David Rattray of the same place, party of the second part, witnesseth : that the said party of the first part has purchased block number forty-three of the subdivision of the trustees of the Illinois and Michigan canal of section number seven, township number thirty-nine, range fourteen east, third principal meridian, and said Robinson hereby

agrees that he will, in connection with said Rattray, go on and get the said block subdivided as they shall mutually think proper and for the interest of the parties, and said Rattray is to dispose of the same either at private or public sale as soon as practicable and thought proper by the parties, for one-fourth down, and the remainder to be secured by notes on one, two, and three years from the first day of May, 1849, in equal annual payments, and bearing interest from date. And the said Robinson agrees that he will, upon the payment of one-fourth in money, and secured by notes as stated above, execute his bond for a good and sufficient deed of conveyance when such notes are paid in full, provided such sale shall not average less than twelve hundred dollars in the aggregate.

"It is further stipulated and agreed that the said Robinson is first to receive the amount of all money paid out for said purchase of said block or blocks, which is nine hundred and sixty-five dollars, together with interest on the same, then the balance to be equally divided between the parties, for which privilege the said Rattray is to plot, survey, or subdivide the said lot or block, and advertise and sell the same at his own expense: which conditions, well and truly to be made, the said parties hereunto mutually bind themselves, heirs, executors, administrators and assigns. Witness their hands and seals, this fifteenth day of May, A. D. 1849.

"In presence of W. A. BALDWIN.

"C. C. ROBINSON,    [SEAL.]
"DAVID RATTRAY. [SEAL.]"

Upon the trial it appeared that, under this agreement, Rattray proceeded, plotted, surveyed, subdivided into seventy-three lots, and advertised for sale, the property described in the agreement, and sold about twenty of those lots, when Robinson stopped the sales, against the remonstrances of Rattray, and notified the latter that he would execute no more papers. Rattray soon after died.

The court gave to the jury the following instructions for the plaintiff:

" 1. If the jury believe, from the evidence, that David Rattray and the defendant made the contract described in the declaration, that Rattray performed the contract on his part by plotting, surveying and subdividing the block described in the contract, at his own expense; that he advertised and sold a part of the lots with the concurrence of defendant and at Rattray's own expense, and was willing and offered to advertise and sell the balance, and could have sold the same in his life-time, but was prevented by the defendant from making further sale thereof, without any just and reasonable excuse, and the defendant, without such excuse, refused to make bonds for deeds, upon payment and security, as provided by the agreement, then the jury will find for the plaintiff and assess the damages.

" 2. If the jury find, from the evidence, that Rattray had entered upon the performance of the contract on his part, and that defendant had assented to the making of sales of lots, and said sales had already commenced; that afterward Rattray was prevented from selling the lots after the said block had been subdivided by the act of the defendant, and without just or reasonable cause on his part, and defendant, without such just and reasonable cause, refused to make bonds for deeds for the lots sold, upon the payment of one-fourth of the purchase-money down, and the securing of the balance as provided by said agreement, then the plaintiff is entitled to recover such damages as Rattray, in his life-time, sustained by reason of such breach."

The jury found for the administratrix of Rattray, and assessed the damages at $1,300. Upon that verdict the court rendered a judgment. From this judgment C. C. Robinson now appeals. The main question in the case was one arising upon the construction of that clause in the contract which provided for sales of the lots " as soon as practicable and thought proper by the parties." The breach assigned in the declaration was:

" The said plaintiffs in fact say, that, after the said Rattray had, in pursuance of said articles of agreement, subdivided and platted said block in seventy-two lots, and advertised the same for sale, the said defendant, without any just or reasonable

cause for so doing, *stopped the sale* of said lots by Rattray, and *refused to permit* them to be sold, and *refused to make any bonds* for deeds of conveyance, or to make any deeds of conveyance for said lots if they should be sold by said Rattray, whereby the sale of said lots was prevented, and without any just or reasonable case."

Messrs. ARRINGTON & DENT, for the appellant.

Mr. W. C. GOUDY, for the appellees.

Mr. JUSTICE LAWRENCE* delivered the opinion of the Court:

On the 15th day of May, 1849, Robinson and Rattray executed an agreement in writing, by which Rattray was to plot, survey, subdivide into lots, advertise, and sell, at his own expense, a block of ground situate in Chicago, which Robinson had bought from the canal trustees for $965. The sales were to be made "as soon as practicable and thought proper by the parties," for one-fourth in hand and the residue in three yearly installments. They were to amount to not less than $1,200 in the aggregate, and out of the proceeds Robinson was first to receive his $965 and interest, and the balance was to be equally divided between him and Rattray. Robinson was to execute bonds for deeds, as the lots were sold. Rattray proceeded to perform his part of the contract, and had sold about twenty of the seventy-three lots into which the block was subdivided, when Robinson stopped the sales, against the remonstrances of Rattray, and notified the latter that he would execute no more papers. Rattray soon after died. His heirs first filed a bill in chancery against Robinson, which came before this court. The case is reported in the 24th Ill. The court there held that the heirs of Rattray, if they could maintain an action at all, must resort to the common law side of the court. They have now brought this suit, and its decision depends upon the construction to be given to the contract.

---

* This case was submitted at the April Term, 1863, when Judge LAWRENCE was not upon the bench. It was, however, submitted on printed arguments, and was decided after Judge LAWRENCE took his seat.

While it is not the province of courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such contracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice. The intention of the parties, it is true, must govern ; but the experience of human affairs teaches courts that this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the objects they evidently had in view. It often happens that a particular clause in an instrument is made to bear a meaning quite inconsistent•with the natural import of the terms used by reference to the entire language and general scope of the contract. " The judges," says Lord HALE, " ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties; they will not, therefore, cavil about the propriety of words, when the intent of the parties appears, but will rather apply the words to fulfill the intent than destroy the intent by reason of the insufficiency of the words." BROOM's Maxims, 416, marg. p. In *Hesse* v. *Stevenson*, 3 B. & P. 574, the court say : " However general the words of a covenant may be, standing alone, yet if, from other covenants in the same deed, it is plainly and irresistibly to be inferred, that the party could not have intended to use the words in the general sense which they import, the court will limit the operation of the general words."

In *Simms* v. *Johnson*, 3 B. & Ad. 175, a deed came up for construction which recited that disputes were subsisting between the parties, about which actions had been brought, and it had been agreed, in order to put an end thereto, that they should respectively execute releases of " all actions or causes of action, claims and demands which each might claim by reason of any thing whatsoever." " I cannot read this," said Lord TEN-TERDEN, " without seeing, that the release which follows was intended to apply to the matter recited, namely, the actions then depending, and that the object was to put an end to them.

The generality of the language was therefore to be confined by the recital." Cases of this class are frequent in the books. See notes to *Pordage* v. *Cole*, 1 Wms. Saunders, 319.

In the case at bar, the court below construed that clause of the contract which provides for the sale of the lots " as soon as practicable and thought proper by the parties," to give no right to Robinson to stop the sales upon his arbitrary whim, but only in good faith and upon just and reasonable cause. We think this construction is within the principles above laid down. We can have no doubt that when the parties provided for making the sales " as soon as practicable and thought proper " by them, each was understood by the other to mean that neither party was to exercise the right of stopping the sale, except for reasonable cause, and acting in good faith. This was an implied term in the contract. Any other construction supposes the parties to have intended respectively to reserve the right to act in bad faith. It is also true that any other construction would involve consequences so unreasonable and unjust, that it cannot be supposed the parties intended them, or intended their contract to receive an interpretation that would lead to them. For, if Robinson had the right, under this clause, as is contended, to stop the sales as a mere matter of caprice, Rattray had the same right. Suppose, then, after laying out the block and selling a single lot, Rattray had decided that the property should remain unsold for a term of years, in view of the probable or possible increase of its value. Could he have enjoined Robinson from selling and conveying the lots? Clearly not. And if, on the other hand, after Rattray had been at the expense and trouble of surveying, advertising and selling enough of the lots to reimburse Robinson his $965 and interest, which sum was to be first paid, can it be supposed that the parties intended it should then be in the power of Robinson to stop the sale, without cause, and thus deprive Rattray of all benefit from the contract? Such a construction is not admissible if it can be fairly avoided. The parties provided the lots should be sold " as soon as practicable," and their evident intention in adding the other clause was merely

to prevent either party from sacrificing the property. A mode of proceeding involving such sacrifice would have given to the other party the right to interfere under the clause in question.

In the view we take of the contract, the breach was substantially well assigned in the declaration, and the case was fairly submitted to the jury by the instructions.

*Judgment affirmed.*

