## DAVID G. WELLS

*v.*

## HENRY S. CARPENTER.

1.   PARTNERSHIP— *sale by one to the other partner after dissolution.— remedy whether legal or equitable.*   A and B, partners in the grain trade, and flour and grocery business, dissolved the partnership by dividing the business so that A took the grocery business on his own account, with all its profits and liabilities, and B the grain business on the same terms. Soon after, A, being sick, got B to take the grocery off his hands, B agreeing to pay A the capital he had put into the original partnership in payment for the sale of the grocery to him, " as soon as he could do so without inconvenience:"   *Held*, in an action at law by A against B to recover the price agreed to be paid, that the sale had no connection with the prior partnership dealings, or at least not such a connection as made a resort to a court of equity necessary, it not being necessary to adjust the losses and profits to ascertain the capital stock put in by A.

2. CONSTRUCTION—*rule for construing contract.* The true principle of sound ethics is, to give a contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it.

3. CONTRACT—*construed as to time of payment.* Where a party made a sale, the purchaser agreeing to pay the purchase money as soon as he could without inconvenience, and the proof showed that the purchaser told the witness that he was to pay the seller "back his money as fast as he could collect it up and get straightened up:" *Held,* that from this it would be implied that payment was to be made within a reasonable time, and the suit not having been brought until one year after, a recovery was affirmed by this court.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. THOMAS H. HUTCHINS, and Mr. G. D. A. PARKS, for the appellant.

Messrs. OLIN & PHELPS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Will circuit court, brought by Wells against Carpenter, who had been partners in a grocery store, for Wells' share of the stock which Wells had sold to Carpenter after dissolution of the partnership.

These parties had been partners in the grain trade, and flour and grocery business, into which Wells had put three thousand six hundred and seventy-six $\frac{83}{100}$ dollars as his proportion of the capital. The partnership commenced about the middle of May, 1868, and was dissolved about the last day of June of the same year; Carpenter to assume the grain business with all its profits and liabilities, and Wells the grocery business on the same conditions.

This was fully carried out. In about one week after Wells had taken the grocery under his control, from sickness or other cause, he was unwilling to give it any further attention, and proposed to Carpenter "to take it off his hands." This,

after considerable discussion and hesitation, Carpenter consented to do, agreeing at the same time to return to Wells the money he had put into the concern "as soon as he could without inconvenience."

Wells then retired wholly from the business, Carpenter conducting it on his own account.

In about three weeks subsequent to this, on the 27th of July, Carpenter sold the entire grocery store to Clark and Moreland, and put them in possession. Wells had nothing to do with this sale. The purchasers paid Carpenter, and Wells' name was not mentioned in the transaction. They were a week or ten days negotiating before they purchased. After this sale to Clark and Moreland neither Wells nor Carpenter had any thing to do with the store. Moreland paid in part with land which he conveyed to Carpenter.

The defendant rested his defense on the ground that plaintiff's claim grew out of a partnership transaction, or business which had never been settled; that there never had been a balance struck between them, and that defendant never promised to pay any specified sum.

The court trying the cause, a jury having been waived, found for the plaintiff, and assessed his damages at the amount of his capital stock with interest.

The defendant appeals, and makes the same point here, that it was a partnership transaction, and no balance having been ascertained, and no promise to pay any specified sum, an action at law can not be maintained, the only remedy being in equity.

It is true, a partnership once existed between these parties, the plaintiff selling out his interest to the defendant, his co-partner, and he taking exclusive possession of the concern, and disposing of it soon after to Clark and Moreland.

This trade, it does not seem to us, has any connection with their dealng, as partners, and such as could only be adjusted in chancery.   It was made when no partnership existed

between them, for Wells conducted the grocery business until July 8th on his own separate account and individual responsibility. When the arrangement was made between them, on or about the first of July, the partnership was thereby dissolved, and Wells, taking the grocery as his own, had as much right to sell it to his former partner in the concern, as he had to sell to him a horse or a farm.

We are satisfied the rule that one partner can not bring an action at law against another partner except for a balance struck and a promise to pay it, has no application. The reason of that rule has no existence here, because in order to ascertain the amount appellee is entitled to receive of appellant, no examination of partnership accounts is necessary, nor any inquiry into profits and losses, nor into any matter growing out of a partnership concern. No losses can be set up against appellee's claim, no investigation of accounts is involved, but the simple demand is, that appellant shall pay to appellee the amount he put into the grocery, and which appellant promised to do. *Lintner* v. *Millikin,* 47 Ill, 178–184.

But it is insisted by appellant, but we suppose not seriously, that he was to pay for this stock when it was convenient. Wells did testify, when he sold out to appellant, he left it all in his hands with the understanding he was to pay him back his money as soon as he could without inconvenience. Who was to determine the question of inconvenience? What the parties meant appears from Cagwin's testimony, who says that Carpenter told him he was to pay Wells back his money as fast as he could collect it up and get straightened up. This would imply a reasonable time, and one year elapsed before suit was brought. This must have been the sense in which the contract was understood by the parties. The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it. 2 Kent's Com. 556.

Appellant's understanding of it is shown by the testimony of Cagwin, and it harmonizes with appellee's understanding, as he gave appellant one year "to collect and get straightened up."

There is no well founded pretense that the contract was without consideration. The property was sold to appellant, he took it into his own exclusive possession, and in a few days thereafter sold it as his property to Clark and Moreland, and received payment therefor. Justice requires he should pay appellee.

The error or shortage supposed to have been discovered in appellee's account amounts to nothing. Appellant was to pay back the amount appellee had put in—no more, no less. He has proved what he put in, and for that the court below rendered a judgment.

We can not perceive any error in the record, and must affirm the judgment.

*Judgment affirmed.*