CHARLES A. STREET *et al.*

*v.*

THE CHICAGO WHARFING AND STORAGE COMPANY.

*Filed at Ottawa October 11, 1895.*

1. PLEADING—*right of plaintiff, in equity, to substitute amended bill.* An original and an amended bill to which demurrers are sustained, but which the court did not dismiss, but retained the same merely for purposes of amendment, no cross-bill having been filed, may be dismissed by the complainant for the purpose of substituting a second amended bill.

2. SAME—*part, only, of relief prayed may be granted.* Under prayer for reformation and specific performance of a contract, and a general prayer for relief, specific performance may be granted without reformation, where reformation is unnecessary.

3. CONTRACTS—*should be construed in the light of all circumstances.* The court, in construing a contract, will, if necessary, put itself in the place of the parties, and read the contract in the light of the objects they had in view and the circumstances surrounding them.

4. SAME—*effect of construction by acts of the parties themselves.* The acts of the parties to a contract, whether contemporaneous or subsequent, indicative of their construction of it, may be resorted to to determine its true meaning.

5. SAME—*understanding of one party, with the other's knowledge, controls.* A contract is to be taken in the sense in which it was in fact understood by one of the parties to the knowledge of the other, when a new contract will not be made thereby.

6. SAME—*construction of a particular contract.* Under an agreement for the lease of dock property, providing that the lessee shall be "entitled to take the planking now on said ground" belonging to the present lessee at the appraised value as provided for in the latter's lease, or to "purchase such planking direct from the latter," with a further provision that the lessor agrees to purchase "the planking on said yard," at the expiration of the lease, at its then appraised

value, the lessee is bound, at all events, to take the planking, having only the option as to the mode of acquiring it.

7. SPECIFIC PERFORMANCE—*when principal debtor may be compelled by surety to perform.* Lessees who have agreed with their landlord to purchase property of former lessees upon the leased premises, in accordance with the terms of the former lease obligating the landlord to purchase the same, are in equity, as between them and the landlord, the principal debtors, and the landlord, being their surety, may maintain a bill to compel them to discharge their obligation to such former lessees.

8. APPEALS AND ERRORS—*waiver of right to introduce evidence after appeal.* The fact that a defendant introduces no evidence at a trial, but contents himself with cross-examining plaintiff's witnesses and objecting to testimony, will not prevent a decree, without further evidence, upon a remanding of the case, on appeal, with directions to enter a decree against defendant.

9. SAME—*objection that remedy is at law must be made in trial court.* A defendant who answers and goes to a hearing and decision upon the merits, cannot first raise, on appeal, the point that complainant had an adequate remedy at law.

*Chicago Wharfing and Storage Co.* v. *Street,* 54 Ill. App. 569, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

The Chicago Wharfing and Storage Company, appellee herein, was the owner of certain dock property in Chicago, subject to a leasehold interest of Walter Shoemaker & Co., such leasehold beginning May 1, 1887, and ending April 30, 1892. Shoemaker & Co. had placed on the property a large amount of planking for driveways and sorting platforms, and had erected fences, lumber sheds, and laid foundation timber for piling lumber. The lease to Shoemaker & Co. provided that in case the lease should not be renewed the lessor should, at its expiration, purchase the planking on the premises and pay therefor the valuation made by three appraisers. Street, Chatfield & Co., the appellants, negotiated for a lease of the premises for a term beginning May 1, 1892, and their attention was called to the provision in the Shoemaker

lease requiring the lessor to purchase the planking, and the lease was shown to them. The negotiations with Street, Chatfield & Co. were made on behalf of the company by Galloway, who is its treasurer, and on behalf of Street, Chatfield & Co. by Street. Galloway stated to Street the provisions of the Shoemaker lease; that Street or the company should take the planking at the expiration of that lease at an appraised value, at the same time saying that he, Galloway, would lease the property to appellants for $5400 a year, provided they would take the planking as provided in the lease. Street, in answer to that proposition, said he would like to negotiate with Shoemaker for the lumber shed, stable, fencing, and some other things that they had on the ground which were not included in the arbitration agreement, and that while he (Street) was negotiating for these he might make an arrangement to purchase the planking. Galloway said he had no objections to his buying the planking by private trade,—that "he could either buy it or take it at the appraised value." Street said he would take the premises on the terms named. They then put their agreement into writing. The agreement, as written, is substantially this:

"Memorandum of agreement, made the second day of February, 1892, between the Chicago Wharfing and Storage Company, a corporation of the one part, and Street, Chatfield & Co. of the other part:

"*Witnesseth:* That the first party agrees to lease to the second party lots 29-38, both inclusive, in sub-block 2 of block 18, Sheffield's addition to Chicago, now occupied by Walter Shoemaker & Co., from May 1, 1892, to April 30, 1897, for $450 a month, to be paid monthly in advance, beginning May 1, 1892. First party agrees to provide an office. First party is to pay taxes on the ground and second party on the improvements. In consideration of the undertaking by the first party, the second party agrees to take a lease of said premises and to pay the rent named and to pay taxes. The party of the second

part shall be entitled to take the planking now on said ground, belonging to Walter Shoemaker & Co., at the appraised value, as provided for in the lease between James B. Galloway and Walter Shoemaker & Co., or to purchase said planking direct from Walter Shoemaker & Co., and at the expiration of the lease hereby agreed to be made, the first party agrees to purchase the planking on said yard of Street, Chatfield & Co. at its then appraised value, to be appraised as follows: Each of the parties to said lease shall select one appraiser, and if these two cannot agree they shall select a third appraiser, and the majority of the three so chosen shall decide the value of said planking. First party agrees to enforce the terms of lease with Shoemaker & Co. regarding the river channel."

After this agreement was made Street negotiated with Shoemaker & Co., and bought the lumber shed, fencing and other property on the premises, but they could not agree on the price of the planking. Street then requested an immediate appraisal. Appraisers were appointed, but the one selected by Galloway declined to act, and Street then said he would himself get a man who would be acceptable and who would make a good appraiser. Street informed Galloway of the time set for the appraisal and requested him to be present. On April 7, 1892, Street introduced Galloway to Holtmeier, the appraiser selected by Street, and an appraisal was made the same day. The price placed on the planking was almost $500 more than the amount for which it had been offered to Street by Shoemaker & Co. Galloway left while the appraisers were at work, but Street remained until the appraisal was made. The next day Street called on Galloway and said the appraisal was too high, but he was willing to pay the amount for which it had been offered to him. Shoemaker & Co. refused the offer. Leases were drawn and tendered to Street, Chatfield & Co. in accordance with the agreement referred to, a provision being inserted

that Street, Chatfield & Co. should pay the appraisal. They declined to sign the lease. On May 1, 1892, Street, Chatfield & Co. took possession of the property and the planking, and are using the same in their business. On May 2, 1892, they sent the complainant notice to remove the planking.

On May 13, 1892, appellee filed a bill against appellants for the specific performance of the contract. A demurrer was sustained to that bill, as was also a demurrer to an amended bill. Thereupon appellee, by leave of court, filed this its second amended bill, and prayed therein both for a reformation of the contract and for specific performance. There was then answer and replication, and the cause was referred to a master in chancery to take the evidence and report his conclusions thereon. The master reported the testimony and his conclusions. His ultimate conclusions were, that it was the understanding of the parties to the agreement, prior to the time when the same was reduced to writing, that Street, Chatfield & Co. should either take the planking at the appraised value or should purchase it from Shoemaker & Co. at private sale, but that it is not shown that when the agreement was actually dictated by Galloway and written out it was the intention of the parties to use any different language than was used in the agreement, and that Galloway thought that the words "be entitled to," meant, and all the time has insisted that they do mean, something different from what the court has already determined they do mean; that Street felt all the time, until advised to the contrary by his attorney, that he was obliged to do one of two things : either take the planking at its appraised value or purchase it at private sale; yet that this conclusion is not without doubt, and it is possible that he and Galloway may have understood the matter differently; that the evidence does not show any such mistake as comes within the rules governing the reformation of contracts. The master recommended

that a decree should be entered dismissing the second amended bill for want of equity.

At the hearing, the court refused to allow the exceptions to the master's report, and dismissed the second amended bill out of court for want of equity. Upon a writ of error sued out of the Appellate Court for the First District the decree of the circuit court was reversed and the cause remanded, with directions to enter a decree directing Street, Chatfield & Co. to pay into court the appraised value of the planking as found by the appraisers, with interest thereon at five per cent per annum from May 1, 1892, and to execute a lease of said premises in accordance with the instrument signed by the parties and bearing date February 2, 1892, the same to be prepared and executed by the Chicago Wharfing and Storage Company. The judgment and decree of the Appellate Court are brought here for review by this appeal.

· S. M. MILLARD, for appellants.

ADOLPH TRAUB, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

As we understand the record the original bill and the first amended bill are not now before us. Under a leave to amend, the complainant below struck out of the record the original and the first amended bills, with the exception of the exhibits, which were expressly retained and made parts of the second amended bill of complaint. Although the court had sustained demurrers to the original and first amended bills, yet it had not dismissed either of them, but had retained them for purposes of amendment, and the complainant had the right to dismiss them, not only because no cross-bill had been filed, but for the purpose of substituting for them, with the leave of the court, its second amended bill.

But we are unable to see that any of these things that we have mentioned materially affect the rights of the

parties. By the second amended bill two objects are sought: the reformation of the contract, and the specific performance of the contract. The Appellate Court held that the complainant is entitled to the last of these measures of relief, but that it was not necessary that there should be any reformation of the agreement signed by the parties. Assuming a proper case is made out for relief, there can be no sound objection to this view. The prayer is for both kinds of relief, and that includes each kind. And besides this, the bill contains the general prayer for other and further relief, and that is comprehensive enough to include all the relief that the Appellate Court directed to be given.

Nor can the point now be made that appellee has an adequate remedy at law. Appellants answered the second amended bill and went to a hearing, and submitted the question of their rights to the decision of the chancellor. In cases that are not wholly foreign to the jurisdiction of a court of chancery, defendants cannot do this, and then, in the event the adjudications are adverse to their interests, claim that the complainants had adequate remedies in the courts of law.

The material question in the case is as to the interpretation to be put upon the contract. Are appellants bound to take the planking and pay its appraised value?

Where the contract is in writing, the writing itself is primarily to be considered in ascertaining the intention of the parties, and all its different provisions are to be read and construed together, so as, if possible, to make a sensible and consistent whole. It is apparent that from the stipulation that the party of the second part "shall be entitled to take the planking" "at the appraised value," "or to purchase said planking direct from Walter Shoemaker & Co.," taken alone, it is difficult, perhaps impossible, to deduce a conclusion that it was the intention to absolutely bind the party of the second part to take the planking, in one way or the other. The words, in

and of themselves and separated from the context, seem to indicate an option or privilege given said second party to take the planking if they saw fit so to do, and if they elected to take it, then they should also have the right to either make a personal contract of purchase with Shoemaker & Co. or take it at its appraised value. But in the same sentence with said provision, and immediately following it, and separated from it only by a comma, is this further provision: "And at the expiration of the lease hereby agreed to be made, the first party agrees to purchase the planking on said yard of Street, Chatfield & Co. at its then appraised value." How could appellee, at the expiration of the lease bargained for, purchase the planking from appellants, unless it be that the latter first got it from Shoemaker & Co., either at an agreed price or at the appraised value ascertained in the manner pointed out in the then expiring lease to Shoemaker & Co.? The reasonable and necessary implication is, that it was intended by both parties that appellants should, at all events, take the planking, either in the one way or the other. This being so, it is evident that when, in their written contract, they used the words, "shall be entitled to take the planking at the appraised value or to purchase said planking direct," by means of a bargain to be made with Shoemaker & Co., the only option or choice the parties were making provision for was simply and only an option or choice to appellants as to the mode by means of which they should acquire the property.

It will not do to say, that the provision for the purchase of "the planking on said yard," at the end of the term to be demised to appellants, had reference to planking that might be purchased by them and placed on the yard during such term. That which is specified in this sentence of the memorandum of agreement, and which the parties state they were contracting about, was "the planking now on said ground belonging to Walter Shoemaker & Co.;" and they, a little further along in said sen-

tence, speak of "said planking," and immediately add, that at the expiration of the new lease agreed to be made the first party is "to purchase the planking on said yard at its then appraised value." It seems to us that it is quite plain that the planking that the parties had in their minds at the time, and that was the subject matter of their contract, was the planking that they then spoke of as "now on said ground."

The rule is, that the intention of the parties must govern, but that the intention is not to be sought merely in the apparent meaning of the language used, but that the meaning of this language may be enlarged or limited according to the true intent of the parties, as made manifest by the various provisions of the contract considered as a whole. (*Robinson* v. *Stow*, 39 Ill. 568; *Chicago, Madison and Northern Railroad Co.* v. *National Elevator Co.* 153 id. 70; *Bull* v. *City of Quincy*, 155 id. 566.) In *Field* v. *Leiter*, 118 Ill. 17, we said that greater regard is to be had to the clear intent of a contract, when ascertained, than to any particular words which may have been used in the expression of that intent.    In *Hesse* v. *Stevenson*, 3 B. & P. 574, the court used this language, which was quoted with approval by this court in *Robinson* v. *Stow*, *supra:* "However general the words of a covenant may be, standing alone, yet if, from other covenants in the same deed, it is plainly and irresistibly to be inferred that the party could not have intended to use the words in the general sense which they import, the court will limit the operation of the general words." In the case at bar the words "shall be entitled," found in the contract, are, as we think, to be limited in their operation to the matter of an election by appellants as to which of the two designated ways of acquiring the ownership of the planking on the yard they should adopt.

But if it should be regarded that the contract, in view of its phraseology and its various provisions, is ambiguous, and therefore open to extrinsic aid in the matter of

its construction, there are various other rules of interpretation which, from the standpoint of the evidence *dehors* the written agreement itself, lead to the same conclusion that we have already reached, and make it reasonably certain. Some of these, which we regard as having good and sure foundations in the testimony contained in this record, we may mention: The court will, if necessary, put itself in the place of. the parties, and read the contract in the light of the circumstances surrounding them at the time it was made, and of the objects which they then evidently had in view. So, also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement. And in this regard it makes no difference whether such acts are contemporaneous or subsequent. (*Vermont Street Church* v. *Brose*, 104 Ill. 206.) Moreover, where the contract is in fact understood by one of the parties in a certain sense, and the other party knows that he so understands it, then the undertaking is to be taken in that sense, provided this can be done without making a new contract for the parties. (*Wells* v. *Carpenter*, 65 Ill. 447.) Here, there can be no question whatever, under the evidence, but that appellants knew full well the intention and understanding of appellee, and the object it had in view, at the time the memorandum of agreement was made. In fact, we even think that the master in chancery was justified by the evidence in the conclusion that he reached and reported to the court, that Street himself thought that he was obliged to do one of two things,—either take the planking at its appraised value or purchase it at private sale,—until, upon consulting an attorney, he was advised to the contrary.

In respect to the obligation to pay Walter Shoemaker & Co. the value of the planking as found by the appraisement, the appellants, as between themselves and appellee, are, in the view of a court of equity, the principal

debtors and appellee their surety, and appellee, therefore, is entitled to maintain a bill to compel appellants to discharge their obligation to Walter Shoemaker & Co. *Moore* v. *Topliff*, 107 Ill. 241; *Coggeshall* v. *Ruggles*, 62 id. 401.

The doctrine of estoppel seems, to some extent, to be relied on by appellants. In our opinion that doctrine has no place in this case, unless it be that it is applicable as against appellants themselves.

It is urged it was error in the Appellate Court to remand the cause with directions to enter a decree against appellants, without giving them opportunity to introduce testimony and be heard in the circuit court. This claim is based on the fact that they brought forward no evidence, either before the master or at the hearing, but contented themselves with cross-examining the witnesses of appellee and objecting to its testimony. They had opportunity to produce such witnesses and such competent testimony as they desired. Not having availed themselves of this opportunity, it must be presumed that they either acquiesced in the statements made by the witnesses introduced by appellee as true, or concluded that they could not successfully and truthfully contradict them, and therefore were willing to submit the cause for decision, relying upon the claim of the incompetency and insufficiency of the evidence of appellee to establish its cause. As they made their bed they must lie in it. Courts will not hear causes by piecemeal. Appellants have had their day in court. If the defense they made was unsuccessful, it was their misfortune; but the fact they made a bad and insufficient defense does not give them the right to have the cause remanded for the purpose of affording them an opportunity to hunt up a better defense. Sound public policy demands that there shall be an end to litigation.

The judgment and order of the Appellate Court are affirmed.                            *Judgment affirmed.*