## Sampson W. Moon for use of Charles Heddon, Appellee, v. Charles E. Roberts, Appellant.

### Gen. No. 19,270.

Patents, § 33*—*provision in royalty contract construed.* A provision in a royalty stating that the "Party of the second part agrees that the minimum amount of royalties to be received by said party of the first part shall be $200 per month, provided, however, that no forfeiture of this contract shall be had under this clause if an amount equal to $600 be paid as royalties during any three consecutive months," construed to be a provision for forfeiture and not an absolute undertaking by the party of the first part to pay $200 during the life of the patent in case the royalties did not amount to the minimum sum mentioned.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Appeal from the Municipal Court of Chicago; the Hon. JOSEPH SABATH,Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed. Opinion filed April 21, 1914.

WILLIAM SHERMAN HAY, for appellant; HAY & BROWN, of counsel.

PATRICK F. MURRAY, for appellee; JOHN T. MURRAY, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

In this action appellee, Moon, for the use of his assignee, Heddon, seeks to recover from appellant, Roberts, the minimum amount of license fees or royalties per month from July 17, 1909, until May 17, 1911, which it is alleged appellant Roberts agreed to pay Moon by a written agreement made on July 17, 1907. The plaintiff, appellee, had judgment below on an instructed verdict for $3,600.

The principal question on which the case turns is the construction to be given to the contract and particularly the seventh paragraph thereof.

The contract recites that the first party, Moon, is the inventor of certain new and useful improvements in electrical vibratory massage machines for which he had filed application for letters patent of the United States, and also improvements for which application had not been filed; and that appellant, Roberts, was desirous of manufacturing and selling machines containing such improvements. By the first and second paragraphs of the contract, Roberts is licensed and empowered exclusively to manufacture and sell the machines in the United States and Canada for the term of the patents, subject only to whatever rights, if any, which the Horto Electric Company acquired in the improvements prior to January 1, 1907, which were in litigation. By the third paragraph of the contract, Roberts agreed to make full and true returns

upon the fifth days in every month for the preceding month of all machines containing the patented improvements manufactured by him. In the fourth paragraph, Roberts agreed to pay Moon a license fee named upon every machine manufactured by him, based upon the retail price of such machine, and the retail prices and license fees are therein specified in detail; and it is further provided that the license fee on machines operated by battery, and those adapted for doctors' use and those adapted for use on both direct and alternating currents should thereafter be agreed upon and should be between ten and twelve per cent. of the retail price.

The fifth paragraph provides for the termination of the license by Moon, upon the failure of Roberts to make returns or to make payments of license fees as in the contract provided. By the sixth paragraph, Roberts is required to make the machines in good workmanlike manner out of the best quality of material and to stamp every machine with the words "Moon Vibrator," or such other words as may be agreed upon, and to use his best endeavors in the manufacture and sale of the machines, and to properly advertise them.

The seventh paragraph upon which this action is based reads as follows:

"7th. Party of the second part agrees that the minimum amount of royalties to be received by said party of the first part shall be $200 per month, provided, however, that no forfeiture of this contract shall be had under this clause if an amount equal to $600 be paid as royalties during any three consecutive months. This minimum feature of this contract shall not be applied to the first six months after the date hereof. This clause shall be subject to fire, strikes and like causes beyond the control of the second party."

The subsequent paragraphs of the contract have no bearing upon the question here involved and need not be stated.

The question is whether the undertaking of Roberts, appellant, is absolute to pay appellee Moon at least

$200 per month as royalties during the life of the patents or so long as the patentee Moon elected to continue the contract or license in force, although the royalties specified in the fourth paragraph of the contract do not amount to that sum as contended by appellee; or whether, on the other hand, Roberts has the election or alternative to pay the excess over the royalties up to the sum of $200 per month, or $600 for any consecutive three months and thus preserve the license from forfeiture, or to refuse to pay beyond the amount of the royalties, subject only to the hazard of having his right to manufacture forfeited at the election of Moon or his assignee, as contended by appellant Roberts.

In construing contracts the court in *Street v. Chicago Wharfing & Storage Co.*, 157 Ill. 605, 613; said:

"The rule is, that the intention of the parties must govern, but that the intention is not to be sought merely in the apparent meaning of the language used, but that the meaning of this language may be enlarged or limited according to the true intent of the parties, as made manifest by the various provisions of the contract considered as a whole. (*Robinson v. Stow,* 39 Ill. 568; *Chicago, Madison & Northern R. R. Co. v. National Elevator Co.*, 153 id. 70; *Bull v. City of Quincy,* 155 id. 566.) In *Field v. Leiter,* 118 Ill. 17, we said that greater regard is to be had to the clear intent of a contract, when ascertained, than to any particular words which may have been used in the expression of that intent. In *Hesse v. Stevenson,* 3 B. & P. 574, the court used this language, which was quoted with approval by this court in *Robinson v. Stow, supra*: 'However general the words of a covenant may be, standing alone, yet if, from other covenants in the same deed, it is plainly and irresistibly to be inferred that the party could not have intended to use the words in the general sense which they import, the court will limit the operation of the general words.' "

In *Fairbanks, Morse & Co. v. Guilfoyle,* 33 Ky. Law Rep. 408, the court of appeals of Kentucky had before it a contract whereby the defendant, in consideration

of the exclusive right to manufacture and sell track levelers patented by plaintiffs, agreed to pay them a royalty of $1 for each set manufactured and sold, excepting for those sold to a certain railroad on which the royalty was to be fifty cents a set, and agreed that the royalty should average $200 a year, and if the royalties for any year, together with those paid for previous years, did not average $200 per year, plaintiffs could terminate the contract on a stipulated notice, unless the defendant paid them an amount sufficient to bring up the average to that sum. It was held that the defendant did not agree absolutely to pay a royalty of $200 a year, and on failure or refusal to do so the plaintiffs could only terminate the contract.

In *Wing v. Ansonia Clock Co.*, 102 N. Y. 531, the question was whether the Ansonia Clock Company had made an absolute undertaking to pay at least $8,000 in each year for royalties under a contract that contained a provision by which the company agreed to pay at least the sum of $4,000 per annum for each and every year from January 1, 1882, by way of royalties or otherwise, for the manufacture of pianofortes containing five or more octaves with the patented improvements, or else forfeit the right to manufacture such pianofortes under the license given by the contract, if the parties of the first part should so elect by notice in writing to that effect within ten days of the close of any year in which less than $4,000 was paid; and by a second clause a similar provision was made for the payment of another sum of $4,000 on the same conditions on account of another class of instruments. The court held, considering the contract as a whole, that the undertaking of the Ansonia Clock Company was not an absolute one to pay any sum over the royalties required to be paid, but that it had the election, in case the royalties upon instruments manufactured did not amount to the sum specified, to pay the excess up to that sum, or refuse to pay subject to the hazard of a forfeiture of its license at the election of

the patentees, and that, therefore, an action to recover such excess was not maintainable.

In *Ebert v. Loewenstein*, 42 App. Div. (N. Y.) 109, the court had before it for consideration a contract in which the defendant had agreed to pay the plaintiff as royalty for the exclusive right to manufacture a patented article five cents for every article manufactured, and that the royalties he should pay should amount in the aggregate each year to at least $3,000, and the plaintiff agreed to continue the license if defendant should make up the deficit in cash if the royalties did not amount to $3,000, and the plaintiff was given the option of terminating the license if the annual income on the royalties was less than $3,000. The court held that the contract did not bind the defendant absolutely to make up the deficit, but that it gave the patentee the right to put an end to the contract if he saw fit on notice, in which case the defendant would be called upon to determine whether he should pay enough to make up the full $3,000, or allow the contract to be terminated.

Applying the principles and authorities above quoted and cited to the record and contract before us, it is clear, we think, that by the seventh clause, above quoted in full, the parties intended to treat of and provide a basis for a forfeiture of the contract in case the minimum amount of royalties, which Moon was to receive under the terms of the contract and the amount of the business contemplated in the contract, did not result in royalties amounting to $600 during any three consecutive months. There is no absolute undertaking in this clause of the contract that Roberts should pay $200 per month during the life of the patent in case the royalties due under the fourth paragraph of the contract did not amount to the minimum amount mentioned in this seventh clause. This clause is evidently a provision of the contract inserted for the benefit of Moon to enable him to terminate the contract with Roberts in case the expected income from the royalties due under the contract did not amount to $200 per month or $600 for three consecutive months. It sets

up merely a measure of expected income from royalties, and in the event that such measure was not reached under the terms of the contract, Moon would have a right to forfeit the contract unless Roberts paid him the difference between the actual royalties earned and the minimum amount named. The whole paragraph is a provision for the termination or forfeiture of the contract under the conditions therein named. The absolute obligation of Roberts to pay royalties is set forth in the fourth paragraph of the contract, in which that subject is specifically treated. If it was intended by the parties to the contract that Roberts was to pay Moon at least $200 per month in the nature of guarantied royalties, such a provision or undertaking would naturally appear in the fourth paragraph of the contract where that subject is treated.

The third, fourth and fifth paragraphs of the contract appear to be clearly and carefully drawn, and they provide that Roberts should pay a specified fee for each kind of machine manufactured, for detailed monthly statements of all machines manufactured, and for the termination of the license for failure to pay or make returns as provided. But no provision, reference or suggestion is made in any of those paragraphs or any other paragraph in the contract whereby Roberts might be called upon to make a minimum monthly payment. If the contention of appellee herein had been within the intent of the parties, that the payment of a minimum amount of royalties was to be assumed by Roberts absolutely, surely language as plain and unambiguous as that used in the third, fourth and fifth paragraphs of the contract would have been used in the seventh paragraph; for this obligation, as contended for by Moon, involved the imposition upon Roberts of the burden of paying an aggregate sum of $43,-600 during the life of the patents, whether any machines were manufactured and sold or not. A liability of that considerable proportion, if intended to be contracted for by Moon and imposed upon Roberts, would

surely have been embodied in some clear and specific covenant, and not left to the general language used in the seventh paragraph.

It is only by inference, or a doubtful and strained construction of the language used in a paragraph devoted to another and different subject, that an absolute agreement to pay the "minimum amount" of royalty can be held to be made. No such intent is expressed in the other provisions of the contract. On the contrary, it is excluded and negatived by the specific provisions of paragraphs 3 and 4. The machine was new, untried and imperfect, requiring further experiments, changes and alterations; and it is unreasonable to suppose that any such absolute undertaking could have been in the minds of the parties at the time and under the circumstances existing when the contract was made. No other inference from the facts shown by the record can be drawn than that Moon himself, while the second contract of July 17, 1908, was in force, and while the Moon Vibrator Company, of which Moon was the manager and appellant the financial backer, was engaged for a year in experimenting with and attempting to perfect the vibrator, was wholly unable to produce a machine of any practical or merchantable value.

In the argument on behalf of appellee, reliance is placed on *Linington v. Strong,* 90 Ill. 556. The agreement under consideration in that case, after fixing the royalty per gross of pinchers made and sold and providing for keeping accurate book accounts of the number of pinchers manufactured and sold and for true statements therefrom at the end of each quarter, provided, "and also agrees to pay the royalty on at least 2,500 dozen of said pinchers each year during the term aforesaid."

This provision is a direct and positive undertaking to pay the royalty on 2,500 dozen pinchers each year. It is a very different provision from the one here involved.

Moon v. Roberts, 186 Ill. App. 15.

In *Preston v. Smith*, 156 Ill. 359, also relied upon by counsel for appellee, the agreement provided, in connection with other agreements of the licensee, as follows: "Said E. B. Preston & Co. further agree that the royalty paid to said C. L. Smith shall equal at least $450 per annum. In case they do not reach this amount this agreement can be canceled by C. L. Smith, and a new one made that will be satisfactory to him." Here a clear intention is expressed to the effect that Preston & Company are to pay a royalty of $450 per annum, and then there follows a provision for a specified royalty of fifty cents per dozen for hydrant swivels of a certain size. The agreement to pay at least $450 per annum as royalty is in immediate connection with the specified royalty of fifty cents per dozen, and clearly indicates, as expressed in the agreement, an intent that Preston & Company were to pay at least $450 per annum, even though the specified royalties immediately provided for thereafter should not equal that amount. There is no similarity in that contract to the one now before us. The intent is clear in that contract while no intention is manifested in the contract now under our consideration, either considered as a whole, or considered with reference to the provisions of paragraph 7. *Preston v. Smith, supra,* is not applicable, in our opinion, to the case at bar.

In our opinion, the contract before us does not contain an absolute covenant to pay the minimum royalty mentioned in paragraph 7, nor is such intent to be gathered from the contract as a whole. This construction of the contract is vital to the case, and makes it unnecessary for us to discuss any of the other questions raised in the briefs and arguments. The contract furnishes no basis for the recovery of the judgment below, and the judgment is accordingly reversed.

*Reversed.*