**Alma L. Slade, Appellant, v. Dana Slade, Jr., Sarah
Kehoe and Frank J. Dinges, Appellees.**

**Gen. No. 44,636.**

Opinion filed May 18, 1949. Released for publication June 17, 1949.

JAMES B. McKEON, of Chicago, for appellant.

ECKERT & PETERSON, of Chicago, for appellees; WALTER W. ROSS, JR., of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

The entire capital stock of 1,000 shares of Slade, Hipp & Meloy, Inc., an Illinois corporation, with its principal place of business in Chicago, was owned by Samuel Slade and Dana Slade, Jr., his brother, and by their wives, Alma L. Slade and Ida Slade, respectively. Samuel Slade and Alma Slade owned 499 shares and Dana Slade, Jr. and Ida Slade owned 499 shares. The remaining two shares were, as a matter of form, shown in the name of Frank J. Dinges. He never had physical possession of these two shares, which were actually owned by the two brothers and their wives. Therefore, Samuel Slade and his wife owned 500 shares and Dana Slade, Jr. and his wife owned 500 shares. On February 2, 1932, to effectuate a plan of Samuel Slade and Dana Slade, Jr. for the conduct of the business of the corporation by the survivor of them after the death of one of them, there was executed by the four of them an agreement in writing, which became article 14 of the by-laws of the corporation. Thereunder, in case of the death of either brother, leaving his widow surviving him, the corporation agreed to pay such widow $500 per month for a period of one year from the death of her husband. The surviving brother was to have the right to purchase all the shares of stock owned by his deceased brother and his wife within one year of the death of either brother.

An inventory was to be taken on the first of January following such death. The purchase price for the stock was to be the amount realized by dividing the net assets of the corporation by the total number of shares of stock issued and outstanding, the net assets to be obtained by charging off all the liabilities from the total assets determined by a fair appraisal. Good will was not to be considered as an asset in making the appraisal. Payment was to be by 10 per cent of the purchase price in cash and the balance in nine equal promissory notes due on or before 1, 2, 3, 4, 5, 6, 7, 8 and 9 years, respectively, after date, with interest at 6 per cent per annum, payable semi-annually after date. All of the stock was to be held as collateral security until the notes were paid. In the event the surviving brother did not purchase the stock within one year from such death, then the stock of the deceased brother and his wife "may be sold either in parcels or as a whole for such price or prices as are obtainable provided that before making such sale, the stock shall first be offered to the survivor at the price at which it is proposed to sell, and such survivor shall have five (5) days within which to purchase said stock at said price."

Samuel Slade died February 16, 1936, leaving a last will in which he devised and bequeathed to his widow, Alma Slade, all of his estate of any nature remaining after the payment of debts and funeral expenses. The will was admitted to probate in the probate court of Cook county on March 2, 1936, and she was appointed and qualified as executrix. The major portion of his estate consisted of the following stocks: 50 shares Insull Utilities; 375 shares Union Carbide & Carbon Corporation; 32 shares Westinghouse Electric Co.; 65 shares Wrigley Jr. Corporation; 50 shares Chicago Corporation and 40 shares Electric Household Utilities Corporation. These stocks were pledged to the Continental Illinois National Bank & Trust Co., as collat-

eral security for the indebtedness of the corporation. The remainder of his estate consisted of the capital stock of the corporation. Samuel Slade and Alma Slade were married on October 9, 1899. She lived with him as his wife until his death, at which time she was 70 years of age. On December 18, 1936, Dana Slade Jr. served notice on Alma Slade, individually and as executrix, that he elected to exercise his right to purchase all of the stock of the corporation registered on the books of the corporation in her name and in the name of Samuel Slade, for the purchase price and upon the terms set forth in the agreement of February 2, 1932, made between the four parties thereto.

Negotiations resulted in the acceptance by Alma Slade of an offer of Dana Slade, Jr. for the purchase of her stock and the stock of Samuel Slade, deceased, in the corporation at an aggregate price of $55,000, payable $10,000 in cash and by nine notes of $5,000 each, dated November 1, 1938, and maturing one each year thereafter, with interest at 5 per cent per annum, payable monthly. As part of the transaction the corporation and Dana Slade, Jr. released all claims against the estate of Samuel Slade, deceased. Sarah Kehoe and Frank J. Dinges were for many years employees of the corporation. Later they became executive officers therein. They knew the business relationship of the brothers and the plan for transfer of the stock provided for in the contract of February 2, 1932. On March 1, 1940, Alma Slade filed her amended complaint at law in the superior court of Cook county against Dana Slade, Jr., Sarah Kehoe and Frank J. Dinges. This amended complaint of three counts was in the form of an action in tort for damages. The court sustained defendants' motion to dismiss and entered judgment for defendants. On appeal we reversed the judgment and remanded the cause for further proceedings in conformity with the views ex-

pressed. (*Slade v. Slade,* 310 Ill. App. 77.) When the cause was redocketed defendants answered, raising issues of fact and of law. On October 10, 1943, Dana Slade, Jr. died, and his death was suggested on the record. On May 4, 1944, the action was dismissed as to him and ordered to proceed as to Sarah Kehoe and Frank J. Dinges. Defendants state that plaintiff then filed her complaint against the estate of Dana Slade, Jr., setting up substantially the same charges as are contained in the amended complaint of the instant action, which cause against the estate of Dana Slade, Jr. is pending and undisposed of in the superior court of Cook county. By stipulation an order was entered referring the instant cause to a master in chancery who, as a referee, was directed to take evidence and report his conclusions of law and fact with the same force and effect as a reference to a master in chancery in a suit in chancery. At the close of plaintiff's evidence the defendants moved for the entry of a finding in their favor, or in the alternative to dismiss the cause. The referee denied the motions, reporting his action to the court. The court allowed defendants' motion to dismiss the cause, and entered judgment for the defendants, Sarah Kehoe and Frank J. Dinges. Plaintiff appeals.

A summary of her amended complaint shows that plaintiff claims that Sarah Kehoe and Frank J. Dinges conspired with Dana Slade, Jr. to compel plaintiff to sell Dana Slade, Jr. her interest in the corporation for less than the true worth of the interest; that to effectuate the conspiracy these defendants conspired with Dana Slade, Jr. to depreciate the apparent value of the corporate stock; that they then conspired with Dana Slade, Jr. to coerce plaintiff to accept less for her stock than the true worth thereof: (1) by asserting a false claim against the estate of her deceased husband, Samuel Slade; (2) by refusing to release to plaintiff the stocks pledged by Samuel Slade to the bank as

collateral security for the indebtedness of the corporation; and (3) by preventing plaintiff from exercising any rights of stock ownership in the corporation. She claims further that these acts of coercion were committed by defendants knowing that plaintiff was in straightened financial circumstances, and that as a result of her impoverishment and these acts of coercion she accepted in December of 1938 from Dana Slade, Jr. $55,000 for her interest in the corporate stock; and that she would not have sold on such terms except that she was under duress of being compelled so to do for lack of finances.

The first point urged by plaintiff is that the court erred in finding for the defendants at the close of plaintiff's case; that a conspiracy between Dana Slade, Jr. and defendants to deprive plaintiff of a fair and equitable settlement under the contract was shown by the evidence; and that substantial loss and damage has resulted therefrom to her. On a motion to find for the defendants at the close of plaintiff's case, the court is called upon to decide whether, after considering all the evidence with all reasonable inferences to be drawn therefrom in its aspect most favorable to the plaintiff, there is a total failure to prove one or more necessary elements of the case. We agree with defendants that the evidence fails to show that the defendants conspired with Dana Slade, Jr. to compel her to sell her corporate stock to him. Defendants were not parties to the contract for the sale of the stock. The evidence does not show that Dana Slade, Jr. compelled plaintiff to sell her stock. On January 19, 1937, he furnished her with an audit report prepared by George E. West & Company, showing the amount due her according to an audit, and in the letter accompanying the audit Dana Slade, Jr. offered to pay plaintiff the amount shown to be due her for her stock. She made no effort to sell her stock to anyone other than

Dana Slade, Jr., but hired attorneys in an effort to get Dana Slade, Jr. to buy at her figure.

The evidence fails to show that defendants conspired to depreciate the apparent value of plaintiff's interest in the corporation, or that she received less than the fair value of her stock. We are satisfied that plaintiff's settlement with Dana Slade, Jr. for $55,000 was a fair and equitable settlement. There is no evidence in the record tending to show that defendants conspired concerning the value of the assets of the corporation, or that any one besides Dana Slade, Jr. and his auditors had any authoritative control over the establishment of the value of the assets of the corporation, or over the statement to plaintiff. Plaintiff states that in order to reduce the value of the assets the defendants conspired to set up certain reserves. The first item mentioned by her is a $5,000 reserve to cover the claim of the Chicago Sample Company. This item was set up on the books of the corporation at a time when a suit of the Chicago Sample Company praying damages in the sum of $5,000 was pending and undisposed. It was not settled until 1938, over a year after the auditor's statement was furnished to plaintiff. The auditor's report stated that this claim "will be subject to adjustment when actual figures are known." There is no proof that anyone other than the auditor had anything to do with the amount of the reserve, or that the auditor thought it improper.

The next item discussed by plaintiff is the amount of $986.68 covering the expense of making certain improvements in the building occupied by the corporation. As the corporation was only a tenant, this would appear to be, from an accounting standpoint, a proper charge to expense. No evidence was offered as to the term of the lease. The record fails to show that these defendants were in any way responsible for the item having been set up by the auditor as an ex-

pense item. Plaintiff complains that no reasonable explanation was made as to why as large an amount as $5,600 should be added to the cost of goods sold. There was no evidence as to the impropriety of the entry. Although plaintiff had two sets of auditors examine the books, including this item, who furnished reports to her, neither of these sets of auditors took the stand to testify on her behalf, nor was their absence explained, nor were their reports offered in evidence. A reasonable inference is that these auditors found the item in order. Plaintiff alleges that Dinges ''with the intention of reducing the value of'' her stock, increased the salaries of some of the employees. An examination of the increases given shows that in most instances $2 and $3 raises were given to several minor employees during the year 1936, a period of rising labor prices. With one exception all of the employees' salaries ranged from $14 to $30 a week. The facts do not support her charge as to the salary increases. She also refers to certain raises given during 1937. As the contract for the sale of the stock provided that an inventory for the valuation thereof should be taken on the first of January following the death, which would be January 1, 1937, any action with regard to the raising of salaries effective after January 1, 1937, would have no bearing on the value of her stock as of January 1, 1937.

Another act of coercion charged against defendants has to do with the claim in the amount of $15,842.88 made by the corporation against the estate of Samuel Slade, deceased. Plaintiff urges that although defendants knew that the claim was false and untrue, they persisted in maintaining that they were entitled to deduct the same from the settlement. For many years prior to his death, Samuel Slade was vice president and treasurer of the corporation. As such he took care of the minute book and the books of account. While he held these positions he organized a

corporation known as the Walton Studios. Samuel Slade ran the financial end of the Walton Studios and plaintiff ran the rest of it. The Walton Studios occupied space rented by Slade, Hipp & Meloy, Inc., from the middle of 1928 to 1932 and received other services. After the death of Samuel Slade in 1936, Dana Slade, Jr. called in George E. West & Company, licensed public accountants, to audit the books of Slade, Hipp & Meloy, Inc. During the course of the audit this auditing firm discovered that Samuel Slade had not been paying Slade, Hipp & Meloy, Inc. anything for the rent of this space and the services rendered, and that Samuel Slade had in other ways manipulated the books of Slade, Hipp & Meloy, Inc. The auditing firm prepared a ''memorandum statement of items not properly distributed by Samuel Slade,'' a copy of which was furnished to plaintiff. Slade, Hipp & Meloy, Inc. had no interest in the Walton Studios. It is conceded that the foregoing items made up the claim filed by Slade, Hipp & Meloy, Inc. against the estate of Samuel Slade, deceased. In a trial lasting an entire day in the probate court, in which plaintiff was represented by able counsel, the claim of Slade, Hipp & Meloy, Inc. was allowed in the sum of $13,189.39. The presumption is that the judgment of the court in allowing the claim is correct. If she was not satisfied with that judgment she had a right to appeal. When the settlement was made between the parties, the allowance of the claim was vacated. There is no basis for plaintiff's contention that defendants concocted the claim in order to minimize the value of her interest in the corporation, and there is no evidence that these defendants had anything to do with the claim.

Plaintiff maintains that defendants conspired with Dana Slade, Jr. to coerce the plaintiff to settle her one-half interest in the corporation on the basis of a net worth of approximately $55,000 in an unfair appraisal, thus reducing the value of her interest in the corpo-

ration by approximately $17,500. The defendants and Dana Slade, Jr. knew that she had been accustomed to the manner of living made possible by her husband's salary of $12,000 or more per annum, and that she had no other income after the first year of his death, except what she received as dividends from stock put up by her husband during his lifetime as collateral for a loan to the corporation by the bank. She charges that the purpose and intent of Dana Slade, Jr. was to take advantage of her necessity and lack of funds so that eventually she would succumb to pressure and accept a settlement much less than she was entitled to receive under the terms of the contract. She also charges that during the continuation of the conspiracy and pressure she was compelled to give up her large apartment on Lake Shore Drive; that her income was finally reduced to $75 per month; that her meager income made it almost impossible to buy food and other necessities of life, or to carry on in any manner in accordance with common decency. Plaintiff received $500 a month for one year after the death of her husband. The record is devoid of any evidence to substantiate plaintiff's contention that defendants conspired with Dana Slade, Jr. to take advantage of her impecunious situation and the resulting lowering of her standard of living in order to force her to make the settlement which she eventually made.

Plaintiff maintains that the failure of defendants to release the collateral security at the bank constituted an act of duress. It will be observed that there is nothing in the contract having to do with any duty of the surviving brother to release the deceased brother's collateral. Even if there was an inference to be drawn from the agreement, the duty would not come into existence until the parties had agreed on the purchase price of the stock. It is conceded by plaintiff that as soon as she and Dana Slade, Jr. agreed upon the purchase price, her collateral was released. She also

states that Dana Slade, Jr. was obligated to release the collateral because the corporation was run as a partnership. There is no evidence that the corporation was conducted as a partnership. Even if it had been so run, there is no rule of law that requires a surviving partner to first release the deceased partner's collateral for the partnership loan, and then thereafter proceed to come to an agreement with the deceased partner's widow as to the value of her interest. It should be borne in mind that throughout the period in which plaintiff contends Dana Slade, Jr. refused to release her collateral, she and the corporation were carrying on hotly contested litigation over the corporation's claim against her husband's estate, and that it was not until March 1938, that this litigation was decided adversely to plaintiff and the corporation's claim was allowed in the amount of $13,189.39. We agree with defendants that it can hardly be said under these circumstances that Dana Slade, Jr., or the corporation had any obligation to release her stock from the loan at the bank. In support of her contention that she was entitled to have the stock released when Dana Slade, Jr. notified her of his intention to buy her stock, she cites *Street v. Chicago Wharfing & Storage Co.*, 157 Ill. 605; *Roberts v. American Bonding & Trust Co.*, 83 Ill. App. 463; and *Moore v. Topliff*, 107 Ill. 241. These cases held that a surety may maintain a bill to compel his principal to discharge his obligation to the creditor at the maturity of the obligation. The cases are not applicable as plaintiff did not prove in the case at bar the date of maturity of the corporation's loan from the bank, although the record shows that the information was available to her. We agree with defendants that from these facts it is fair to assume that the bank loan did not come due at any time prior to the date the securities were released, or she would have proved the fact. It appears from the auditor's statement that on December 31, 1936, the corpo-

ration had on hand $1,493.39 in cash, and that the notes payable at the bank amounted to $36,000. Under these circumstances, it cannot be inferred that the corporation was in a position to release the plaintiff's collateral. Furthermore, plaintiff has offered no evidence tending to show that these defendants were in any way involved with the plaintiff's collateral.

Plaintiff charges that immediately after the death of her husband on February 16, 1936, she was as completely shut off from any information in so far as the business of the corporation was concerned as if she had been a total stranger, and that Dinges combined with Dana Slade, Jr. to keep her from obtaining any information. We agree with defendants that this charge is unsupported by the testimony. When Dana Slade, Jr. sent her the audit report of his accountants on the basis of which he agreed to settle with plaintiff for the purchase of her stock, he stated in the letter of transmittal that ''any information you may desire regarding this preliminary report will be gladly furnished to you.'' Plaintiff testified that after the death of her husband she had two different sets of auditors make examinations of the sets of books. In addition she had attorneys representing her at all times, negotiating with Dana Slade, Jr. and his attorney in regard to the fair price for the stock. No stockholders' meetings were held after Samuel Slade's death during the year 1936. Plaintiff failed to prove that the defendants conspired with Dana Slade, Jr. to coerce plaintiff into selling her stock for an unconscionable price by shutting her off from the records of the corporation. On December 18, 1936, Dana Slade, Jr. notified her in writing that he had elected to exercise his right to purchase all the stock under the contract. Under these circumstances, while the legal title to the stock in question was in plaintiff until she actually transferred it into Dana Slade, Jr.'s name, the equitable title and hence the right to vote the shares was in Dana Slade, Jr. There is no evidence that either

Sarah Kehoe or Frank J. Dinges shut plaintiff off from securing information, or conspired with Dana Slade, Jr. to that end.

Other points are urged for reversal of the judgment, but we consider that the above discussion makes it clear that the court was right in finding for the defendants at the close of plaintiff's case. We find that plaintiff failed to make a case against the defendants. Therefore, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

KILEY and LEWE, JJ., concur.