Nelson W. Evans et al., Defendants in Error, v. Ross Construction Company, Plaintiff in Error.

Gen. No. 4,885.

1. CONTRACTS—*when parol evidence competent to show true meaning of.* If before a contract is made and while the parties are in the act of arranging its terms, particular words are agreed upon as having a particular meaning, then parol evidence is competent to show the true intent and undertaking of the parties.

2. EVIDENCE—*burden of proof to show payment.* The burden of proof to establish payment in full or upon account, is upon the defendant.

Assumpsit. Error to the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

SEARS & SMITH, for plaintiff in error.

MURPHY & ALSCHULER, for defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Ross Construction Company had a contract to do certain work between Aurora and DeKalb in the construction of the line of the DeKalb & Rockford Electric Traction Company. The Ross Construction Company, under the name of W. C. Ross & Company, sublet about two miles of the grading to defendants in error, partners as Evans & Avery. After Evans & Avery had completed a part of the work the Ross Construction Company, hereinafter called the company, took the work out of the hands of Evans & Avery and seized their tools and machinery and finished the contract. Evans & Avery brought this suit against the company to recover a balance claimed to be due them for the work done and for the damages which they suffered by being deprived of the opportunity of finishing the contract. There was a trial and a verdict for plaintiffs for $1,000. The company obtained a new trial. At a second trial plaintiffs had a verdict and a judgment for $1,300. This is a writ of error to review that judgment.

The contract was mainly printed, and the written parts were inserted by the officers of the company. In the contract the prices to be paid were specified as follows: "Price per cubic yard or as measured: For grubbing, twenty-five ($25.00) dollars per acre. Embankment borrowed, 14 cents per cubic yard. Excavations, 14 cents per cubic yard." The specifications contained, among other provisions, the following:

"Earth wasted from cuts must be deposited alongside of cuts. * * * Borrow pits shall not have on the side toward the roadbed a slope of less than one and one-half to one. When, in the judgment of the engineer in charge, at his advisability, all material should be borrowed on one side of the roadbed, or the width of the berme increased, or borrow pits to be made to a uniform width and depth as far as possible and be properly drained and to present an even and

workmanlike finish.   *   *   *   At depot sites, sidings and other places where it is desirable not to have spoil banks or borrow pits, the contractor may be required to haul the borrowed material from such point as the engineer in charge may direct or to make such dispositions of waste material as in the judgment of the engineer in charge may be necessary without extra charge to the company other than the regular contract prices.   *   *   *   Overhaul of five hundred feet will be the limit of free hauls, which means five hundred feet from a point of gravity in cut to a point of gravity in fill, not to exceed over five hundred feet. Overhaul shall be paid at the rate of one cent per yard for each additional one hundred feet.''

At the trial the question arose whether, if earth was taken out of a cut and deposited in a fill to make the necessary ground for the road, that earth should be counted once or twice to compute the amount earned by plaintiffs under the contract. Plaintiffs examined G. W. Snellbacher as a witness. He was superintendent for the company when this contract was entered into and he executed the contract on behalf of the company. He testified that prior to making of the contract and in connection with the making of it, he and one Pathrath, who was the chief engineer of the company, and Evans and Avery went over the work together which was to be done by Evans & Avery, and examined the same, and this question came up, and Evans or Avery asked the engineer how the estimate would be made, and he replied that it would be ''both way pay,'' that is, that if they used any of the earth out of a cut to make a fill, they should be paid for both, and that in making this written contract he did so with the understanding that they were to be paid both ways for the dirt necessary to be moved whether it was in cuts or fills. Avery also testified for plaintiffs that in the conversation between himself and his partner and Snellbacher it was said that they were to have fourteen cents for taking the earth out of the cut and fourteen cents for putting it

into the fill. Plaintiffs also proved by Snellbacher that
he considered fourteen cents per cubic yard a reason-
able price for the work, allowing for both cuts and fills.
There was other proof to the same effect. Much of
this testimony was introduced over the objection of
the company, and the main ground on which a reversal
of the judgment is asked is that this evidence was in-
competent, and that the words used in the contract had
a plain and definite meaning and did not have the
meaning expressed in the conversation in question be-
tween the superintendent and chief engineer of the
company on the one hand and the subcontractors on
the other. In Wells v. Carpenter, 65 Ill. 447, the court
said: "The true principle of sound ethics is to give
the contract the sense in which the person making the
promise believed the other party to have accepted it,
if he in fact did so understand and accept it." In
Street v. Chicago Wharfing Company, 157 Ill. 605, the
court said: "The court will, if necessary, put itself in
the place of the parties, and read the contract in the
light of the circumstances surrounding them at the
time it was made, and of the objects which they
then evidently had in view. So, also, the acts of the
parties themselves, indicative of their construction
placed upon it, may be resorted to for the purpose of
determining the true meaning of the written agree-
ment. And in this regard it makes no difference
whether such acts are contemporaneous or subsequent.
(Vermont Street Church v. Brose, 104 Ill. 206.) More-
over, where the contract is in fact understood by one
of the parties in a certain sense, and the other party
knows that he so understands it, then the undertaking
is to be taken in that sense, provided this can be done
without making a new contract for the parties." If,
before this contract was made and while the parties
were in the act of arranging its terms, the chief en-
gineer of the company, in the presence of the superin-
tendent who was to and did execute the contract on
behalf of the company, told the plaintiffs that they

would be paid the proposed contract price of fourteen cents per cubic yard for hauling the dirt out of a cut and a like price for hauling the same dirt into a fill, and if, as the proof is, both parties at that time so understood the sense in which the words were used in the contract, then plaintiffs are entitled to have the contract enforced in that sense. When these objections were interposed plaintiffs were putting in their testimony. That testimony then before the court tended to show that the meaning to be attributed to the words in question was not clear, and we think the court properly admitted this proof. Possibly objections might properly have been sustained to one or two questions, but the substance of the proof was competent. The fact that fourteen cents per cubic yard each way was a reasonable price for the work done was competent as tending to show that that was in fact the sense in which the parties mutually used those words. When defendant came to its proof it called civil engineers who testified that these words had a definite meaning in the profession of engineering, and that the words "Embankment borrowed" meant earth taken from the outside of the work to make an embankment or fill, and did not include earth taken from a cut on the line of the construction; and that under this contract plaintiffs were entitled to be paid only fourteen cents per cubic yard for the handling of any earth, wherever obtained and wherever deposited. We are disposed to conclude, upon a careful examination of all the language in the specifications, that these civil engineers are probably right as to what the words actually meant. But if the superintendent and chief engineer of the company told plaintiffs before the contract was executed and while its terms were under consideration that the meaning was that they were to get pay both ways, and if both parties so understood the contract when they executed it, then that is the sense in which the contract is to be enforced by the courts, regardless of the question whether that

was the correct interpretation of the words. Defendant introduced no proof questioning the correctness of the testimony as to this conversation, and after the evidence of its engineers was introduced defendant did not move to exclude the evidence introduced by plaintiffs as to the conversation. We are of the opinion that no substantial error appears in the rulings of the court on this question.

The proof showed, without contradiction, that the part of the work which plaintiffs did perform was much the more laborious and expensive, and that it cost more than the contract price and that the work left undone by the plaintiffs was the easy and cheap part of the work where the plaintiffs would have made their profits, if they had been permitted to finish the contract. They proved the cost per cubic yard of that which they did do, and an estimate of the less cost per cubic yard of that which they did not do. This proof was undisputed. There was a controversy as to whether the plaintiffs or the company were to blame for the plaintiffs not finishing the work. According to the plaintiffs' proof the company forced them off the work after the hard part of the work had been performed, and seized their tools and machinery and did the easy work therewith itself. The company claimed that the plaintiffs alone were to blame for losing the rest of the contract. The jury seems to have been correctly instructed on this subject, and it decided these issues for the plaintiffs. We do not understand it to be seriously contended that the judgment is excessive if plaintiffs' contentions are correct as to facts and as to the meaning of the contract.

The court gave an instruction at the request of plaintiffs that the burden of proving payment was on the defendant. This stated the law. There was, however, a stiplation as to the payments, and unless the company sought to prove some payments beyond those specified in the stipulation, there was no necessity to

give this instruction. We fail to see, however, how it could have injured the defendant.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*