## Chicago Portland Cement Company, Plaintiff in Error, v. George Hofman, Jr., Defendant in Error.

### Gen. No. 16,299.

1. SALES—*how warranty cannot be established.* The general rule is that preliminary negotiations for the purchase of existing merchandise are merged in the written contract of sale and if no warranty is provided for in the written contract the purchaser is precluded from claiming one.

2. CONTRACTS—*when local trade meaning of words may be established by parol.* Where certain words used in a written contract

have acquired a particular meaning by local or trade usage and such usage is shown to have been so general, uniform and frequent as to warrant the inference that the parties had knowledge of and contracted with reference to the usage, it is competent to show that meaning by parol.

3. CONTRACTS—*when words employed in written, not subject to interpretation.* When the contract is expressed in words well understood by the parties and that are not equivocal or uncertain in meaning the parties are bound by the terms used in the contract, but where the true meaning of the terms used is doubtful, then the court may legally take into consideration all that was said by the parties and all their acts that tend to shed light on the meaning of the words used, whether such statements and acts are contemporaneous or subsequent to the contract.

4. PRACTICE—*effect of non-submission of propositions of law or fact.* If no written propositions of law or fact are submitted to the court the Appellate Court will presume that the trial court did not consider any immaterial or improper evidence in reaching its decision, if there is proper evidence to justify the judgment.

Error to the Municipal Court of Chicago; the Hon. McKenzie Cleland, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed March 13, 1912.

Buell & Abbey, for plaintiff in error.

Samuel Friedlander, for defendant in error.

Mr. Justice Duncan delivered the opinion of the court.

This is an action to recover from defendant in error a balance of $496.20, claimed to be due to plaintiff in error for cement delivered pursuant to a written contract between said parties, dated June 26, 1908. The cause was tried before the court without a jury, resulting in a judgment of $16.20 in favor of plaintiff in error. The cement company prosecutes this writ of error.

It was stipulated by the parties in open court that the balance due to plaintiff in error for cement delivered to defendant in error under the contract was $496.20, subject to the right of the defendant in error

to prove a counter-claim in recoupment after the introduction in evidence of the contract by the plaintiff in error. The counter-claim set up by defendant in error is for breach of warranty as to the quality of the cement and resulting damages to defendant in error by reason of expenditures caused thereby; and, also, for breach of an alleged contract by plaintiff in error, made after the delivery of the cement, to pay the expense of rectifying said defects caused by inferior cement.

The contentions of the parties in regard to the written contract grow out of the following clause thereof, to wit: "We agree to have every car tested as to its quality, and should any number of cars fail to come up to the Standard quality, we agree to furnish you new cement, and further agree that should the cement prove inferior after building is constructed, we will rectify same at our expense."

Defendant in error was constructing a tower in the village of Lyons, and had already completed one story thereof with "Atlas Cement," when the agent of plaintiff in error closed the said contract with him for "AA Portland Cement," with which the tower was to be completed. The only complaint of defendant in error against the cement furnished by plaintiff in error was that it was much darker than the Atlas cement, and that by reason thereof defendant in error was put to great expense in whitening the work with the former cement to make it harmonize with the work done on the first story of the tower. On the trial the court permitted the defendant in error to testify that the agent of the plaintiff in error by an oral agreement guaranteed to the defendant in error that the cement described in the written contract was as light or lighter in color as the Atlas cement, and assured defendant in error that the words "standard quality," used in the contract meant that the cement must be equal to or better than the Atlas cement in quality and in color. These oral statements, as claimed by the defendant in error, were made at the time the written contract was

being typewritten and just after the words, "standard quality," had been written, and before the contract was signed. The court at first refused to allow, but did later permit, plaintiff in error to introduce evidence to prove that the words, "standard quality," had a well-known and fixed meaning to persons engaged in the sale and use of cement; that they had the same signification as the words, the standard specifications, which have reference simply to the grinding strength of cement, and the soundness, specific gravity, and setting qualities thereof, etc., and that the question of color does not enter into such specifications; and that the words standard quality or standard specifications were adopted and defined by the American Society for Testing Materials, and were in general use and well known to the trade. These rulings of the court are assigned as error by the cement company. The general rule is that preliminary negotiations for the purchase of existing merchandise are merged in the written contract of sale, and if no warranty of quality is provided for in the written contract the purchaser is precluded from claiming one. The T. P. T. Co. v. The Crane Co., 208 Ill. 218; The F. & L. Mfg. Co. v. K. & Co., 146 Ill. App. 350.

Where certain words used in a written instrument have acquired a particular meaning by local or trade usage, and such usage is shown to have been so general, uniform and frequent, as to warrant the inference that the parties had knowledge of and contracted with reference to the usage, it is competent to show that meaning by parol. Packard v. Van Schoick, 58 Ill. 79.

When the contract is expressed in words well understood by the parties and that are not equivocal or uncertain in meaning, the parties are bound by the terms used in the contract; but where the true meaning of the terms used is doubtful, then the court may legally take into consideration all that was said by the par-

ties and all their acts that tend to shed light on the meaning of the words used, whether such statements and acts are contemporaneous or subsequent to the contract. F. & L. Mfg. Co. v. Kittredge, 242 Ill. 88; Evans v. Ross Const. Co., 142 Ill. App. 375.

Defendant in error had been using cement in construction work for years, and admits that the words standard quality have a certain and definite meaning among cement men, and that the words had been used in many contracts by him for the purchase of cement. He did not undertake to dispute the evidence of plaintiff in error's witnesses as to its meaning. We think, therefore, no evidence should have been considered by the court as to oral statements made previous to the signing of the contract. When parties adopt a contract containing trade words of well-known meaning to them, they should not be heard to say that there was an oral agreement that they were intended to mean an entirely different thing from their trade use. If the rule were otherwise, defendant in error could as consistently contend that he might show that there was an oral contract that the price of the cement was to be $1.25 per barrel of 380 pounds instead of the contract price of $1.31.

Defendant in error testified that after he had used the cement in question and made his complaint to plaintiff in error that the upper stories of the tower finished in that cement were much darker than the first story; that the agent had Mr. Fraser, its president and others of the company to go out to the tower and view the work; that he, defendant in error, said to Mr. Fraser: "I don't know what to do, but it is up to you people to do all there is to be done in order to get it (the first story) the same as the others, because it would look bad." He further testified that Fraser replied: "The Cement Company will always stand back of their contract. I don't know exactly what to do, but I will tell you—you start and do that

work (sandstone the tower and get it the same color) —you go over that and get the thing right and the Cement Company will stand back of you and pay for it;" that the defendant in error then said to his contractor, Mr. Sauber, in hearing of Mr. Fraser, "Now you have heard what Mr. Fraser said. Do this as economically as you can and get it right." He further testified that he had it sandstoned twice or three times in accordance with Fraser's suggestion at a cost of $480.

He is corroborated in this evidence by Mr. Sauber and a Mr. Westphal. Five witnesses for defendant in error testified that the upper stories of the tower were darker than the first story. About an equal number of witnesses for the plaintiff in error testified that the upper stories of the tower when they were finished in the cement in question and dried were the same in color as the first story; and three or four witnesses for plaintiff in error, including Mr. Fraser, testified that Mr. Fraser did not agree that the cement company would pay for the sandstoning of the tower to get the colors to harmonize. None of these witnesses, except Mr. Fraser, could or would testify that they heard all the conversations between Fraser and Hofmann. Upon these questions of fact we cannot say that the finding of the court against plaintiff in error is manifestly against the weight of the evidence, and we cannot, therefore, legally reverse the judgment upon those findings. Donelson v. E. St. L. Ry. Co., 235 Ill. 625.

No written propositions of law or of facts were submitted to the court to be held as law or as facts in this case. This court should, therefore, hold the presumption to be that the court did not consider any immaterial or improper evidence in reaching its decision, as there is proper evidence to justify the judgment. The Merchants' Desp. Trans. Co. v. Joesting, 89 Ill. 153; Ellison v. C. T. & T. Co., 80 Ill. App. 399.

The promise of plaintiff in error to pay for the sand-stoning of the tower, if defendant in error would have his contractor do the same, if made, was binding on it, although made after the written contract was executed. This oral contract was supported by a new and valuable consideration, the promise of plaintiff in error to pay for the work, if defendant in error would have the same done; and the acceptance of the proposition and the incurring the expense therefor by defendant in error.

The judgment of the Municipal Court is affirmed.

*Judgment affirmed.*