## FRANK H. FOLLANSBEE

*v.*

## GUSTAVUS P. ADAMS.

1. CONTRACT — *when one party may rescind before day of performance.* Where one party agrees to do an act at a future day, and, before the day arrives, declares that he will not keep his contract, or do the act, the other party may act on such declaration without waiting until the day fixed for performance.

2. Where a party has contracted for the sale and future delivery of grain, and, before the time of delivery arrives, becomes insolvent, and informs the purchaser of his inability to perform, and desires an adjustment, the latter may take him at his word, and if the matter is then adjusted by the then market price, this will be a rescission of the contract, and the seller will have no right afterward to make a tender in accordance with the original contract, and maintain a suit under such contract.

3. SAME — *purchaser's right on notice of inability to deliver.* The purchaser of a lot of grain to be delivered during the next month, on being informed by the vendor of his inability to perform, by reason of his insolvency, has the right to purchase a like quantity and charge the vendor the difference in the market price on such day and the contract price. If he charges the vendor with such difference without purchasing other grain, the result is the same.

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. LORIN GRANT PRATT, for the appellant.

Mr. WIRT DEXTER and Mr. S. SIBLEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of *assumpsit*, brought by Frank H. Follansbee in the Superior Court of Cook County, against Augustus P. Adams, to recover damages for a failure of the defendant to accept and pay for a certain quantity of wheat alleged to have been sold him on June 8, 1874, to be delivered at the option of the plaintiff any time in the month of July of the same year. The defendant pleaded the general issue, and gave notice of special matter to be given in evidence under the plea, as follows: That on or about June 11, 1874, the plaintiff failed and became insolvent, and notified

the defendant that he would be unable to deliver the wheat according to the terms of the contract and desired that a settlement should be made in regard to the purchase based upon the market price of wheat that day or the day following; that thereupon a settlement was made, and on such settlement there was found to be due the defendant the sum of $2,043.75. The notice also contained the averment that it was part of the original contract, in case the plaintiff should become insolvent, that the contract should be settled in the manner it was adjusted. A jury was waived by agreement of the parties, and on a trial before the court the issues were found in favor of defendant, and the plaintiff appealed. It is a conceded fact that on June 8, 1874, appellee purchased of appellant 60,000 bushels of wheat, to be delivered at any time in July appellant might select; but the controverted question is, whether the contract was rescinded before the day of delivery arrived. This is not entirely a new question in this court; the principle, at least, which must control has been established by former decisions. In *Fox* v. *Kitton*, 19 Ill. 519, it was held where one party agrees to do an act at a future day, and before the day arrives he declares that he will not keep his contract or do the act, the other party may act on such declaration. In *Chamber of Commerce* v. *Sollitt*, 43 Ill. 523, where a similar question was involved, it is said: "If one party to an executory contract induces the other to believe that he has withdrawn from the contract, the other contracting party need not wait until the day of performance before making new arrangements; nor does he lose his remedy against the delinquent party by providing at once against losses likely to arise from such delinquency." The inquiry, then, is, whether, under the rule announced in the cases cited, the conduct and acts of appellant were such as to authorize appellee to act before the day for the delivery of the wheat arrived, and terminate the contract. Three days after the wheat was purchased appellant failed, and his failure was announced on the Board of Trade. The contracting parties were both mem-

bers of the Board of Trade; the contract was made upon the Board and under its rules.

On the morning of the 11th, appellant's agent and book-keeper was on the Board of Trade, empowered, as he says, to settle this deal. He was then making settlements with various parties with whom appellant had contracts, adjusting differences as the market then was. Appellee testified the agent came to him just as the Board was closing, and wanted to settle up the trade. Appellee requested that the matter might stand over until the next morning, as there were but few present and but little doing. The next morning appellee, not finding the agent on 'Change, spoke to a broker, and the deal was settled at $1.20¼, the then market price of wheat. During the day the agent, as appellee testified, was notified of the settlement, the manner it was made, and price of the wheat. Subsequently the agent requested a statement, of appellee's book-keeper, of the account, in order that he might settle up appellant's accounts, which was furnished. Appellee's book-keeper testified that appellant's agent and book-keeper called on him and said they would settle up the deal. He requested the bills, which were furnished him. Under these circumstances, if any regard is given to the conduct and acts of appellant, we perceive no ground upon which the position can be maintained that the contract remained in force, and appellant had the right, on the last day originally provided by the contract for a delivery of the wheat, to make a tender of warehouse receipts and insist that the contract should be performed by appellee. Appellant, long before the time arrived under the contract for the delivery of the wheat, had failed, was insolvent, and was adjusting his contracts with his different creditors as best he could. His want of ability to perform a contract of this character was well known on the Board of Trade and by appellee. When, therefore, he requested an adjustment of this deal, thus recognizing his inability to perform the contract, appellee had the clear and undoubted right to take him at

his word and act accordingly. Suppose appellant, after his failure, had declared his inability to perform the contract, and appellee, on the faith of that declaration, with the view of obtaining the quantity of wheat purchased, had gone upon the market and contracted for a like amount of wheat from other parties for July delivery, it is conceded in the argument that in such a case appellant would be estopped from questioning the right of appellee to act upon the declarations so made. And yet there is no substantial difference, in principle, between the supposed case and what has been done here. When appellee was notified, by the insolvency of appellant and by his request to settle the contract, of his inability to deliver the wheat in July, according to the terms of the contract, he did not buy 60,000 bushels of wheat of another and charge up the difference to appellant, as he might have done, but he called upon a broker on the Board of Trade to determine the then market price of wheat — or, in other words, what the wheat would cost — and charged the difference between the contract price and what wheat was then worth to appellant. The result is the same, so far as appellant is concerned, as if appellee had bought in the market a like quantity of wheat. We are satisfied, after a careful consideration of the whole record, that the court decided right in holding the contract rescinded. The judgment will, therefore, be affirmed.

*Judgment affirmed.*