B. P. Staley et al., Appellants, v. T. M. Lyman, Appellee.

1. CONTRACTS—*when liability for failure to deliver arises.* If a party who has sold a commodity to another repudiates his obligation to deliver, the other party may act upon such repudiation, rescind the contract and purchase upon the market the commodity so refused to be delivered and recover the difference between the amount paid therefor and the contract price. But the party to whom such commodity should be delivered must make his election so to treat such contract at an end; otherwise the same continues in force for the benefit of both parties.

2. DAMAGES—*when only nominal, recoverable.* If no data is supplied by the evidence from which the actual damages may be computed, nominal damages can only be recovered.

*Assumpsit.* Appeal from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed October 25, 1909.

H. LEONARD JONES, for appellant; O. B. DOBBINS, of counsel.

SCHAEFER & DOLAN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in *assumpsit* by the appellants, partners doing business as Staley & Hitch, against the

appellee Lyman, for the recovery of damages for the alleged breach of two contracts to deliver certain grain. At the close of all the evidence, by direction of the court, the jury found the issues for the plaintiffs and assessed their damages at one cent. From the judgment rendered upon said verdict this appeal is prosecuted by the plaintiffs.

The declaration charges substantially that on October 1, 1905, the defendant sold to the plaintiffs 7000 bushels of corn at thirty-seven cents per bushel, and on May 23, 1906, sold to the plaintiffs 2800 bushels of oats at thirty-one cents per bushel, said corn to be delivered within ninety days from the date of such sale thereof, and said oats within seven days from the date of such sale thereof; that the plaintiffs were ready and willing then and there to receive said grain and to pay the price agreed therefor upon receipt of the same, but that the defendant refused to deliver said grain or any part thereof within the time provided in said contract.

Staley & Hitch were engaged in the grain business, having an office in Champaign, and elevators at Bondville and Staley. About October 1, 1905, Staley on behalf of his firm bought from Lyman, a farmer living near Staley, 7000 bushels of new corn at thirty-seven cents per bushel, which Lyman agreed to deliver at either Staley or Bondville as soon as merchantable during the month of December, 1905, and within ninety days from the date of said contract. On October 10, 1905, Staley went to California, leaving Hitch in charge of the office and elevators of the firm. During Staley's absence Lyman's wife, at his direction, wrote the following letter, addressing it and the envelope containing the same, to Staley personally:

"October 17, 1905.

*"Mr. B. P. Staley.*

Dear Sir: I changed my plans about delivering corn in December and want to cancel the sale of it. I have a good many cattle on hand at present and may need most of it for feed.        T. M. Lyman."

The letter was received in due course of mail. The envelope being addressed to Staley individually Hitch did not open the same when it was delivered but left it with Staley's personal mail awaiting his return from California. Upon his return on October 29, 1905, Staley opened and read the letter, and in response thereto wrote to Lyman refusing to cancel the sale of the corn. In reply thereto Lyman wrote the following, which was received by the plaintiffs on November 2, 1905:

"November 1, 1905.

"*Messrs. Staley & Hitch.*

Yours of Oct. 31st at hand. I wrote you in the middle of Oct. in regard to canceling sale of corn, several days before there was any raise in price of corn. When I did not receive an answer in due time took it for granted the sale was canceled. It is canceled as far as I am concerned. I do not propose to pay the difference. I am not responsible for your absence from place of business. If this is not satisfactory you will have to take legal action. I stand pat on the honorable canceling of that sale before any raise in price of corn.

"T. M. LYMAN."

The evidence shows that the market price of new corn at the time Staley returned from California, October 29, 1905, was forty cents per bushel, and that said price prevailed on November 1, 1905. Upon receipt of the last letter quoted the plaintiffs bought other corn to replace that due under the contract, paying for the same forty cents per bushel. The only questions presented by the contract are as to what sum the plaintiffs were entitled to recover as damages by reason of the failure of the defendant to deliver the corn and oats in question within the time provided by the contracts. The plaintiffs contend that inasmuch as the defendant by his letter of November first repudiated his contract, they had the right to buy other corn to fill the same, and that in such event the measure of damages was the difference between the contract price and the fair cash market value at the time of

repudiation, which they claim as shown by the evidence to have been three cents per bushel, or a total of $210. The defendant contends that the measure of damages was the difference, if any, between the contract price and the fair cash market value at the time and place where the delivery was to be made, and that there being no evidence as to such value at that time, nominal damages only were recoverable.

We are of opinion that upon the receipt of the defendant's letter of November first, the plaintiffs had the right to act thereupon and to rescind the contract and contract with other parties for a like quantity of similar corn, to be delivered at the time and places provided in their contract with the defendant, and to within a reasonable time bring suit for the recovery from him of the difference between the amount paid therefor and the contract price. Follansbee v. Adams, 86 Ill. 13; Kadish v. Young, 108 Ill. 170. The evidence discloses the fair market price of similar corn on the day in question. It does not appear, however, that such was the price on that day for delivery in the following December, and it must therefore be presumed to have been corn which was to be delivered at once. What the plaintiffs were entitled to, under the contract, was to have the corn delivered to them at the time therein provided. They had the right, upon the repudiation of the contract by the defendant, to place themselves in the same and no better situation than that which they would have occupied had there been no repudiation, in other words, they were entitled on November first, to a contract for November corn only and not the actual corn.

The plaintiffs did nothing, however, to indicate to the defendant that they had elected to rescind the contract, either by so notifying him or by bringing suit for a breach of the contract. The mere fact of contracting for other corn did not constitute an election so as to bind the defendant. It must be assumed, therefore, that they chose to treat the notice of repudiation

as inoperative, await the time when the contract was to be executed, and then hold the defendant responsible for the consequences of his non-performance, in which case they kept the contract alive for the benefit of the defendant as well as their own. They had no right, however, to wait as they did, without acting, until the time for performance had elapsed, and then elect to hold the defendant for damages as of the day of notice of repudiation. In either view the court properly limited the recovery to nominal damages, there being no evidence from which actual damages could be correctly admeasured.

There is evidence tending to show that on May 23, 1906, Lyman sold to the plaintiffs 2800 bushels of oats at thirty cents per bushel, to be delivered either at Staley or Bondville within seven days; that Lyman failed to deliver the same within that time; that when requested to do so on the last day provided for delivery, he told Staley that he didn't have time to deliver them just then; that a new bridge was being built over a ditch, and that as soon as that was done he would deliver the oats, and that Staley made no objection to such extension of the time of delivery. There is no definite proof as to the fair market price of oats on the day fixed by contract for their delivery. Neither does it appear from the evidence when the bridge in question was completed or that the plaintiffs ever thereafter demanded delivery of the oats. It follows that there was no data from which actual damages, if any, could be computed, and nominal damages only were recoverable.

The judgment of the Circuit Court is affirmed.

*Affirmed.*

Mr. Justice Philbrick took no part in the consideration of this case.