## Salt Fork Coal Company, Plaintiff in Error, v. Eld= ridge Coal Company, Defendant in Error.

## Gen. No. 16,146.

1. CONTRACTS—*when parol evidence competent.* If the terms employed to designate the time when payment is to be made for merchandise to be delivered are ambiguous parol evidence is competent to enable the court and the jury, if the facts are disputed, to determine the meaning of the terms employed by the parties.

2. CONTRACTS—*when repudiation not waived.* *Held,* under the evidence, that the repudiation of the contract in question in this case was a default which had not been waived and that immediately upon such repudiation a right of action and of recoupment accrued.

3. CHOSES IN ACTION—*effect of assignment.* By the assignment of a chose in action the assignee is given the right to sue in the name of the assignor and to recover to the same extent as the assignor could, and no right of set-off can be maintained by the debtor as against the assignee that was not a valid and subsisting right of set-off against

the assignor at the time the debtor received notice of the assignment, but such an assignment does not defeat the debtor's right to performance by the assignor, and does not cut off the defense of recoupment predicated upon non-performance or defective performance. And advanced payments made by the debtor are to be allowed as a credit where they are distinguishable from mere loans and the right to discounts for payments made before accounts are due is not affected by the assignment.

4. MEASURE OF DAMAGES—*in action for failure to deliver coal.* *Held,* in this case, that the correct measure of damages was the difference in the contract price which the vendee would have had to pay for all the coal it was entitled to receive under the contract after a date when the repudiation took place and the value of the same coal at the price for which it could have been purchased on the market on said date under a contract to deliver in the same manner as provided for in the contract repudiated.

Error to the Municipal Court of Chicago; the HON. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed May 15, 1912.

**Statement by the Court.** June 5, 1908, Eldridge Coal Company, a Chicago corporation, submitted to Salt Fork Coal Company of Oakwood, Illinois, the following proposition, which was duly accepted by the latter company, to wit:

"We propose to take from your mine on the Big Four Railway, in Vermillion County, Illinois, until April 1st, 1910, coal as follows:

Three (3) cars of Mine Run per day at eighty cents (80c) per ton of 2,000 lbs. f. o. b. cars mines.    *    *    *

Mine weights to govern settlements which are to be made as usual and for the Mine Run one half of same to be paid each month in time for the mine payroll on the 10th and one-half in time for the mine payroll on the 25th.

Your acceptance of this as above will constitute a contract between us. Signed in duplicate."

After operating under said contract for a month or more a change was made in the contract, whereby the number of cars per day was increased from three to five, but in other respects the contract remained un-

changed.   September 16, 1908, the Salt Fork Coal Company, for a valuable consideration, assigned in writing to First National Bank of Danville, Illinois, all accounts, claims and demands of every kind and character, due or thereafter to become due from the Eldridge Coal Company to the Salt Fork Company under said contract.   September 21, 1908, the Eldridge Coal Company acknowledged to said bank the receipt of a duplicate copy of the said assignment, and stated that such assignment was entirely satisfactory to it.   December 1, 1908, the Salt Fork Coal Company refused to ship any more coal on said contract, claiming that they could not do so by reason of financial embarrassments.

The Eldridge Coal Company received the following shipments of mine run coal under said contracts, to wit:

| 1908 | Cars | Pounds | Value |
|---|---|---|---|
| June | 32 | 2,566,100 | $ 1,026.44 |
| July | 70 | 5,619,300 | 2,247.72 |
| August | 96 | 7,837,400 | 3,134.96 |
| September | 139 | 10,988,700 | 4,395.48 |
| October | 135 | 11,408,200 | 4,563.28 |
| November | 92 | 7,382,400 | 2,952.96 |
| December | 7 | 549,800 | 219.92 |
| | | | $18,540.76 |

Payments were made for said coal by the Eldridge Coal Company as follows:

| 1908 | |
|---|---|
| June, to Salt Fork Coal Co. | $ 1,000.00 |
| July, to Salt Fork Coal Co. | 1,300.00 |
| August, to Salt Fork Coal Co. | 3,120.00 |
| September, to Salt Fork Coal Co. | 1,837.50 |
| October, to First National Bank of Danville.. | 5,000.00 |
| November, to First National Bank of Danville | 2,700.00 |
| | $14,957.50 |

Salt Fork Coal Co. v. Eldridge Coal Co., 170 Ill. App. 268.

January 19, 1909, the said bank, as assignee, brought suit in the name of the Salt Fork Coal Company against the Eldridge Coal Company to recover the amount unpaid for coal delivered under the contract. The Eldridge Coal Company pleaded the general issue and notice of set-off or recoupment, averring that it had performed its contract without default; that the Salt Fork Coal Company did not perform its contract, but was short in delivery of coal 123 cars up to December, and had shipped no coal since December, to damage of defendant in the sum of $8,393.60.

The evidence also disclosed that the cars delivered under the contract averaged about forty tons of coal to the car, and that up to November 30, 1908, the Salt Fork Coal Company was short in its delivery 122 cars, and from November 30, 1908, to the unexpired term of the contract, it was short in delivery 2,005 cars; that the market price of coal in June, 1908, was 90 to 95 cents f. o. b. cars mines, and remained about the same for July, August, September, October and November, 1908; that there was a price in the open market for the first ten days of December, 1908, for mine run coal delivered at the mine in Vermillion County, Illinois, for future delivery, at the rate of five cars a day to April 1, 1910, and that the market price for coal on such a contract at those times was 93 to 95 cents per ton f. o. b. cars mine; and that the last shipment of coal under said contract was made on November 30, 1908.

At the close of all the evidence in a jury trial the court on motion of the Eldridge Coal Company directed a verdict in its favor and entered judgment accordingly against the said bank, the plaintiff in error here.

ADAMS, BOBB & ADAMS, for plaintiff in error.

SHERIFF, DENT, DOBYNS & FREEMAN for defendant in error.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Plaintiff in error insists that by the terms of the contract the coal received for the first half of every month of the contract was to be paid for on the 25th of the month in which it was received, and that the coal received for the second half of any month was to be paid for on the 10th of the following month, while the claim of the defendant in error is that such coal should be paid for respectively on the 10th and 25th of the month following the month in which it was received. The contract in this regard was ambiguous and it was proper for the court to admit parol evidence to determine the meaning of the parties in the use of the terms, "and for mine run one-half of same to be paid each month in time for the mine pay roll on the 10th, and one-half in time for the mine pay roll on the 25th." If the terms used by the parties to a contract are ambiguous in meaning, and if at the time the contract is being made particular words are agreed upon as having a particular meaning, then parol evidence is admissible to show the true intent and undertaking of the parties, and for such purpose such agreement is competent evidence. Evans v. Ross C. Co., 142 Ill. App. 375; Street v. Chicago W. Co., 157 Ill. 605.

The trial court apparently adopted defendant in error's construction of the contract, and while it was a question for the jury, upon all the evidence properly bearing on that question, to determine the true intent of the parties as to when the payments for coal delivered should fall due, still, as we view this case, the question of when payments properly became due under the contract is not material or controlling.

At the date of the assignment of the account or claim to the plaintiff in error, September 16th, there was nothing due from defendant in error on the contract. At that time no money for coal shipped in September

Salt Fork Coal Co. v. Eldridge Coal Co., 170 Ill. App. 268.

was due until September 25th, even under the conten-
tion of plaintiff in error. The total value of all coal
shipped up to and including the last day of August was
$6,409.12, and the total of the payments by defendant
in error to Salt Fork Coal Company prior to Septem-
ber 16th was $7,357.50, which was $848.38 in excess of
the value of all coal delivered prior to September 1st.
Prior to December 1st defendant in error had paid
to the bank, plaintiff in error, as assignee, $7,700, all
of which had become due since the assignment of the
account. On November 25th there was due from de-
fendant in error under plaintiff in error's construction
of the contract the value of all coal shipped prior to
the second half of November, less the whole amount
paid by defendant in error, or $1,270.74, and by defend-
ant in error's construction there was due $860.36 less
than that sum, or $410.38. The account remained in
the same condition on December 1st when the Salt
Fork Coal Company made default on its contract. On
the day this suit was brought the value of the coal
delivered under the contract, less payments made
thereon, was $3,583.26. The damages to defendant in
error by reason of the failure of the Salt Fork Coal
Company to continue the delivery of coal under the
contract from December 1, 1908, to April 1, 1910, as
shown by the uncontroverted evidence in the record,
exceeded $10,000. If the defendant in error can
legally recoup its damages as against the plaintiff in
error, it is clear that the judgment of the lower court
must be affirmed.

We recognize the claims of plaintiff in error that
the assignment in question is valid, and that by the
assignment it was given the right to sue in the name
of its assignor and recover to the same extent as its
assignor could, and that no right of set-off could be
maintained by defendant in error as against the as-
signee that was not a valid and subsisting right of
set-off against the assignor at the time defendant in

error received notice of such assignment. That is to say, the defendant in error could do nothing after the assignment to the prejudice of the assignee by way of buying up a claim against the assignor for the purpose of set-off, and could not bargain with or pay to the assignor any sum on the claim to the prejudice of the assignee.

We are not prepared to hold, however, that plaintiff in error, as assignee, could not be defeated in recoupment by any action of its assignor through which it claimed and upon whose performance of the contract it had necessarily to depend for any right of recovery at all. The amount that should become due the bank, if any, depended upon whether or not the assignor continued to perform its contract. The assignment, although assented to by defendant in error, did not vest the legal title in the bank to any sum due or to become due on the contract from defendant in error, but simply the equitable right to have whatever sum or sums that might be legally recoverable on the contract in the name of Salt Fork Coal Co. Such assignment and consent cannot certainly be held to take away from defendant in error the right to insist on the performance of the contract by the assignor, nor its right to defeat any suit upon the contract in case the Salt Fork Coal Company should not perform its contract. Performance of the contract, or a *bona fide* offer to perform it, is the first prerequisite to a recovery thereon by either party thereto, and the bank took its assignment of the account in question with full notice thereof, and with full notice of defendant in error's right to recoup in case it suffered damages by reason of a breach by the Salt Fork Coal Company. The right of recoupment is in the nature of a lien, or of a right of a party who has performed his contract to withhold the benefits thereof earned by the defaulting party, until his damages for the breach of the contract are made good, and such right is recognized in this State

in actions at law. Such right ought, it seems to us, to be superior to the lien, or right of an assignee to collect the benefits of the contract earned by his defaulting assignor, and particularly so when nothing is due on the contract when the fruits thereof are assigned, and when the breach and damage occur before the assignee sues. Suppose instead of the breach here assigned as recoupment the Salt Fork Coal Company had continued through December and for the remaining time of the contract to furnish only one car a day instead of five cars as contracted, or had continued to furnish one car a week, or one car a month, to the damage to defendant in error of thirteen cents for every ton of coal not delivered as per contract, is it not clear that the right of defendant in error to recoup its damages ought to prevail even against this assignee suing for the one car per day, or per week or month, so delivered? Had a suit been brought by the bank, as assignee, for the sum due on the contract before the breach thereof, then a different question would arise, but the whole contention of the bank is answered now by the fact that at the time this suit was brought there was nothing legally due or recoverable, because of the fact that the moment the breach of the contract in question occurred, the right of recoupment became available to the defendant in error. In availing itself of the right of recoupment the defendant in error was guilty of no wrong, but was simply asserting its rights under the contract that it had never forfeited by any act or agreement. We are supported in the foregoing conclusions by Am. Bridge Co. v. City of Boston, 202 Mass. 374; Rockwell v. Daniels, 4 Wis. 452; Government of Newfoundland v. Newfoundland Ry. Co., 13 Appeal Cases (L. R.) 199; Stilwell v. Chappell, 30 Ind. 72.

It is also insisted by plaintiff in error that certain advance payments in the form of notes made by the defendant in error to the Salt Fork Coal Company

prior to the assignment of the account cannot be credited to the defendant in error, although the evidence shows that they were accepted by the Salt Fork Coal Company as advance payments. Also, that the agreement between the two coal companies that the defendant in error was to be allowed on said notes or advance payments five per cent. discount is void because in violation of the statute against usury. These notes were accepted by the Salt Fork Coal Company as advance payments and immediately endorsed by it and cashed, long before the assignment, and were receipted for as payments. They were so given at the request of the Salt Fork Coal Company in order that it might meet its pay rolls promptly, which it could not do if it waited for the payments for coal until they were due. We regard the transactions as legal, and that plaintiff in error is bound by the transactions. The five per cent. discount allowed on the face of the notes amounted in substance, to allowing a five per cent. discount on the price of the coal for cash payments made before the accounts were due. Such discounts are commonly made by the mercantile world in all departments where articles of commerce are sold and delivered on account. We regard the transactions as advance payments simply and not as loans.

The contention of plaintiff in error that the defendant in error was also in default on its contract, and for that reason cannot recoup its damages, is not supported by the evidence. The record shows clearly that the defendant in error had been paying in advance for all coal delivered under the contract, and the discounts allowed on the payments to the coal company as advance payments show clearly that it so regarded the payments. While it is true that the defendant in error owed a small balance when the Salt Fork Coal Company refused to further comply with its contract, yet, this was not the fault of the defendant in error, and the payments were not made

in full, because of the fact that the Salt Fork Coal Co. had failed to furnish the weights of the coal as it agreed to do, owing to the fact that its mine scales were out of commission, and it could not weigh the coal at the mine. This circumstance led to an agreement between the coal companies that they were to settle by the weights of the defendant in error's customers, to whom the coal was generally shipped direct from the mine, and the settlements to be made when the weights were furnished to defendant in error by its customers. Approximate payments were accordingly made by defendant in error before or when the coal was shipped, and full and final payments by agreement were to be made when the weights should be thus obtained.

The evidence in this case clearly shows that the weights for the coal not paid for on December 1st had not been furnished to the defendant in error, and that both the parties to the contract at all times prior to that date regarded and treated the contract as a subsisting and binding contract, and that neither of them regarded the other as in default. Although it does appear that both of the parties had not literally complied with the original contract as written, yet, we do not think either party to the contract or the plaintiff in error is legally in a position to insist that there was a default prior to December 1st. The repudiation of the contract, however, was a default that was not waived, and a right of action and of recoupment immediately thereafter accrued to defendant in error. Finch & Co. v. New O. W. C. Co., 156 Ill. App. 589; Staley v. Lyman, 151 Ill. App. 137.

We are also of the opinion that the court followed the correct rule as to the measure of defendant in error's damages; that is, the difference in the contract price it would have had to pay for all the coal it was entitled to receive under the contract after December 1st, and the value of the same coal at the price for

which it could have been purchased on the market, December 1st, 1908, under a contract to deliver the same at the rate of five cars per day for the remainder of the contract. · Defendant in error had the right to be restored simply to its original rights under the broken contract. The court adopted the only proper method of determining the value of such a contract, or of the coal sold under it, i. e., what it would then sell for on the market, for delivery as contracted. Staley v. Lyman, *supra;* Follansbee v. Adams, 86 Ill. 13.

Finding no reversible error in the record, the judgment of the court is affirmed.

*Judgment affirmed.*