## First National Bank, Defendant in Error, v. Hogg-Harris Lumber Company, Plaintiff in Error.

## Gen. No. 18,121.

1. ASSIGNMENTS—*defenses subsisting against assignor.* Where a Mississippi corporation ships lumber to defendant at St. Louis, and assigns the accounts to plaintiff, defendant is entitled to any set-offs, discounts and defenses subsisting against the corporation at the time defendant received notice of the assignment.

2. EVIDENCE—*as to custom of inspecting lumber.* In an action on accounts, for lumber sold to defendant, which are assigned to plaintiff, in determining whether defendant is entitled to a credit for lumber which it claimed was of inferior grade, it is error to exclude evidence as to the custom of inspecting the lumber and allowing credits.

3. CUSTOMS—*assignee of chose in action.* Where plaintiff sues on a chose in action assigned to him, his rights are affected by trade customs to the same extent as were the rights of assignor.

4. CUSTOMS—*when contracts are presumed to be made in reference to.* Contracts made in the ordinary course of business without particular stipulations, express or implied, are presumed to be made in reference to any existing usage or custom, relating to such trade, and persons deal-

ing therein will be held as intending that the business shall be conducted according to such general usage and custom.

Error to the Municipal Court of Chicago; the HON. ROBERT H. SCOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed May 29, 1913.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment of the Municipal Court of Chicago for $283.37, rendered on November 18, 1911, in a case of the fourth class in favor of the First National Bank of Gulfport, Mississippi, plaintiff, against Hogg-Harris Lumber Company, a corporation, having its principal office at St. Louis, Missouri, defendant. The case was tried before the court without a jury.

On July 8, 1911, plaintiff filed an affidavit for attachment on the ground of the nonresidence of defendant, and the Illinois Central Railroad Co. was summoned as garnishee. The defendant filed a general appearance and entered into a recognizance to pay whatever judgment might be rendered against it, whereupon the attachment was dissolved and the garnishee discharged. At the conclusion of a somewhat protracted trial, the plaintiff filed a statement of claim and the defendant was excused from filing an affidavit of merits. From plaintiff's statement it appears that plaintiff claimed that on July 31, 1909, and August 27, 1909, the Forrest Lumber Company, a Mississippi corporation, shipped to the defendant the following four cars of lumber, f. o. b. St. Louis, Missouri, all of which cars were received and accepted by the defendant, and freight paid thereon by defendant, as follows:

| | | |
|---|---:|---:|
| Car No. 11817, July 31, for price of | $313.22 | |
| Freight paid | 89.93 | |
| | | $223.29 |
| Car No. 141041, Aug. 27, for price of | 435.98 | |
| Freight paid | 140.53 | |
| | | 295.45 |

222     APPELLATE COURTS OF ILLINOIS.

First Nat. Bk. v. Hogg-Harris Lumber Co., 181 Ill. App. 220.

| | | |
|---|---|---|
| Car No. 19660, Aug. 27, for price of | 448.85 | |
| Freight paid | 142.32 | |
| | | 306.53 |
| Car No. 19361, Aug. 27, for price of | 347.55 | |
| Freight paid | 112.32 | |
| | | 235.23 |
| | | $1,060.50 |

that at the time the said cars were respectively shipped to defendant, the Forrest Lumber Co., for a valuable consideration, sold and assigned the choses in action to the plaintiff; that the defendant had notice of the assignments at the times it received and accepted said cars; that after having said notice, the defendant paid to the plaintiff upon said assigned accounts, in three separate payments, the total sum of $777.11, and that there is due and owing to plaintiff from defendant the sum of $283.37. Prior to the trial the plaintiff filed certain interrogatories to be answered by George R. Hogg, president of defendant, and to these interrogatories the said Hogg answered that on or about the respective dates of said shipments the defendant received invoices, four in all, purporting to cover the lumber in each of said cars, from the Forrest Lumber Co., of Hattiesburg, Mississippi; that the defendant resold the lumber in each car and reconsigned each car to third persons, and that the defendant paid the freight on each car. Upon the trial the plaintiff introduced the answers of said Hogg to the interrogatories, and the four invoices, and rested its case. The first invoice was dated "Hattiesburg, Miss., 7-31-09," and it was stated in effect on its face that there had been sold and shipped to the Hogg-Harris Lumber Co., St. Louis, Mo., on its order No. 926, in car No. 11817, 421 pieces of "12 foot clear pole stock," at $31, viz: a total price of $313.22, less freight. On its face the following also appeared: "Gulfport, Miss. 7-31-09. For value received we hereby sell, assign and transfer the above

account to the First National Bank of Gulfport, Miss., for its own use. Forrest Lumber Co., Fred L. Colvin.'' The second invoice was dated ''8-27-1909,'' and mentioned a similar sale and shipment to defendant, on its order No. 926, in car No. 141,041, of 566 pieces of ''12 foot pole stock,'' at $435.98, less freight. The third and fourth invoices were each dated ''8-27-09,'' and mentioned similar sales and shipments to defendant, on its order No. 243, in cars numbered respectively 19,660 and 19,361, of a certain number of pieces of ''12 foot pole stock,'' at $448.85 and $347.55, respectively, less freight. On the second, third and fourth invoices there also appeared similar indorsements by the Forrest Lumber Co., dated ''Aug. 27, 1909,'' assigning the respective accounts to the plaintiff.

From the evidence introduced by defendant the following facts appeared: On July 28, 1909, the Mississippi Pine and Hardwood Company, a corporation located at Ackerman, Mississippi, hereinafter called the Mississippi Co., wired the defendant at St. Louis: ''Have two cars twelve pole stock loaded, offer f. o. b. Chicago rate $31; Can you use?'' The defendant on the same day wired the Mississippi Company to ship the two cars to the defendant at St. Louis, and confirmed the telegram by mailing to the Mississippi Co. its written order, No. 926, for ''2 cars, 4x6, 12 foot pole stock'' at the price and terms mentioned. On July 30th, the Mississippi Co., by letter mailed to defendant acknowledged receipt of defendant's telegram and order, No. 926, and stated that ''the invoice and bill lading has gone forward thru the Forrest Lumber Co., * * * our general sales agents, who will render you account sales thru their regular channels.'' On July 31st, the Forrest Lumber Co. wrote a letter to defendant saying: ''Enclosed find duplicate invoice for car 11,817 shipped for your account *by the Mississippi Pine & Hardwood Co.* * * * We have sent the original invoice and B/L through our bank for

224 APPELLATE COURTS OF ILLINOIS.

First Nat. Bk. v. Hogg-Harris Lumber Co., 181 Ill. App. 220.

collection and same will reach you promptly. We would thank you to remit our bank check for at least $175 on receipt of original invoice and B/L." Before car No. 11,817 reached the defendant at St. Louis, defendant resold the contents thereof to the Luehrmann Lumber Co., and by diversion order to the railroad company caused the car to be delivered to the yards of the Luehrmann Co., at St. Louis. No inspection of the contents of the car was made by defendant before said resale and diversion. It was the business custom of the defendant to purchase yellow pine lumber from mills in the southern states, order the same shipped to itself at St. Louis, and, while the material was in transit, resell the same to a customer, and give an order to the railroad company to divert the same to the customer's place of business. Upon receipt of the material the customer would inspect the same and thereafter pay defendant for the material according to grade and the current price. If the material was found by the customer's inspection not to be up to date, the defendant would communicate the facts to the mill from which the material was originally purchased, and endeavor to effect an adjustment as to price with the mill; and, if such adjustment could not be made, the defendant would, with the consent of the consignor, refer the question of the grade of the material to the inspectors of the Yellow Pine Manufacturers' Association. There was evidence tending to show that, by general custom of the yellow pine lumber trade in St. Louis and vicinity, and in some of the southern states including Mississippi, where a question as to the grade of certain lumber was referred to the official inspectors of that association for decision, that decision was accepted as final. There was also evidence tending to show that in 1909 there was a general custom in said yellow pine lumber trade, as follows: Where lumber had been purchased from a mill and consigned to a purchaser,

and while the lumber was in transit, the purchaser resold the same and diverted the lumber to the place requested by the second purchaser, an inspection was had after unloading at the ultimate destination, and any questions arising between the original consignor and the original purchaser, as to whether or not the lumber was of the grade contracted for, were to be determined by said inspection, in the absence of any agreement to the contrary. There was also evidence tending to show that by a general custom in said trade a purchaser paying 80 per cent. of the net amount of the invoice within 10 days from date of shipment was entitled to a discount of 2 per cent. In accordance with this custom the defendant, after estimating the freight on car No. 11,817, mailed its check for $160, dated August 10th, to the Forrest Lumber Co., to pay 80 per cent, of the net invoice of that car. The check was received by that company, and indorsed to plaintiff and cashed by plaintiff. The contents of car No. 141,-041 were also resold to the Luehrmann Co. without inspection by defendant, and by diversion order that car was also delivered to the yards of that company. On August 24th, the defendant mailed to the Mississippi Co. another written order, No. 243, for two cars of "12 foot pole stock @ $35, Chicago rate," and subsequently the defendant received from the Forrest Lumber Co. the invoices for cars numbered 19,660 and 19,361. The contents of these cars while in transit were resold by defendant to the Emerson Mnfg. Co., of Rockford, Illinois, without inspection by defendant, and the shipment diverted and delivered to that company. On September 10th, the defendant mailed its check for $610 to the plaintiff, which check was cashed by plaintiff, and was for 80 per cent of the net amount of the invoices of the three last mentioned cars, as estimated by defendant. After the lumber in cars Nos. 11,817 and 141,041 had been unloaded in the yards of the Luehrmann Co., a representative of that company

226     Appellate Courts of Illinois.

First Nat. Bk. v. Hogg-Harris Lumber Co., 181 Ill. App. 220.

found upon inspection that nearly one-half of the lumber in each car was what was termed "rejects" and the balance was up to grade mentioned in the invoices, viz: "12 foot pole stock." That representative testified that yellow pine "pole stock" is "clear lumber, free from defects, cut to any size that may be ordered, for use as implement tongues or poles," and that the term "rejects" had a universally accepted and understood meaning in the lumber trade in St. Louis and Mississippi, and meant "anything not up to the grade of the stock invoiced or ordered." The Luehrmann Co. kept the contents of the cars intact, piling the lumber that was up to grade in one pile and the "rejects" in another pile, and made complaint to the defendant that the lumber was not all up to grade, which complaint was communicated to the Mississippi Co., from which company defendant had originally purchased the contents of said cars as being "12 foot clear pole stock" or "12 foot pole stock," and on September 13th, a representative of the Mississippi Co. met the president of defendant in the yards of the Luehrmann Co. where the lumber was piled, and they together inspected the lumber, found that considerable of the stock had "bad ends and waney edges," and generally that all of the lumber was not up to grade. It was then and there agreed between them that certain allowances, then reduced to figures, should be made to defendant on the invoice prices of the contents of said cars. On September 15th, the defendant wrote both the plaintiff and the Forrest Lumber Co. of the terms of said settlement, and on the same day mailed a letter to the plaintiff, in which was inclosed a check for $7.11, which amount defendant claimed was the balance due plaintiff on car No. 11,817, and in which letter it was stated that said check was "in full for this car." This check was received and cashed by plaintiff. It does not appear from the evidence that the plaintiff, prior to the beginning of this suit in July, 1911, made

any objection to the settlement made on September 13, 1909, between the defendant and the Mississippi Co. as to the contents of said cars. In the meantime the contents of cars Nos. 19,660 and 19,361 had been inspected in the yards of the Emerson Mnfg. Co., at Rockford, Illinois, by a representative of that company, and some of the lumber had been found not to be up to grade, and defendant was advised of that fact by letter which letter was forwarded to the Mississippi Co., which company in turn requested by letter that the lumber be inspected by the official inspectors of said Yellow Pine Manufacturers' Association. This inspection was had and a report thereof was received by defendant on September 29, 1909, and defendant, on October 2nd, mailed a copy of said report to the Mississippi Co., stating what the official inspection charges amounted to, and saying: "We are of the opinion that these degrades can be settled for on the usual basis of one-half invoice price, and we wish to know if this would be satisfactory to you." To this letter the Mississippi Co. replied on October 7th directing defendant to "pass thru the report on the basis of one-half price for the rejects." There was evidence tending to show that on said basis the amount to be allowed defendant, by deduction from the net invoice price of the contents of car No. 19,660 was $116.77, exclusive of inspection charges, and of car No. 19,361, $20.47, and that defendant promptly notified plaintiff by letter of the amounts which defendant claimed should be so deducted. It does not appear from the evidence that plaintiff replied to this notification, or made any objections to the allowances claimed, prior to the beginning of this suit. It further appeared from the evidence offered by defendant that defendant claimed that, because of the contents of said cars not being up to grade and because of said allowances on said invoice prices and because of the total advance

228     APPELLATE COURTS OF ILLINOIS.

First Nat. Bk. v. Hogg-Harris Lumber Co., 181 Ill. App. 220.

payments of $777.11 made to plaintiff, defendant owed plaintiff nothing and in fact had overpaid plaintiff in the sum of $1.85.

At the conclusion of all the evidence and on motion of plaintiff, the trial court struck out, as being immaterial to the issues, all evidence introduced by defendant as to the general customs of the yellow pine lumber trade, also nearly all of the documentary evidence offered by defendant, and also all evidence as to the agreements made between the defendant and the Mississippi Co. as to allowances on the invoice prices of the contents of said cars. In fact, the court struck out practically all of defendant's evidence as above outlined, refused to allow defendant anything on said invoice prices save the cash payments made to plaintiff and the freight paid, found the issues in favor of plaintiff and assessed plaintiff's damages at $283.37, and entered judgment upon the finding.

ROBERT J. FOLONIE, for plaintiff in error.

FRED H. ATWOOD, FRANK B. PEASE and CHARLES O. LOUCKS, for defendant in error; BURRELL J. CRAMER, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

By statute of this state "the assignee and equitable and bona fide owner of any chose in action not negotiable heretofore or hereafter assigned may sue thereon in his own name, * * * but in such suit, there shall be allowed all just set-offs, discounts and defenses not only against the plaintiff, but also against the assignor or assignors before notice of such assignment shall be given to the defendant." Section 18, chap. 110, Hurd's Ill. Stat. In this case the plaintiff, as assignee of certain choses in action against the defendant, of which assignment the defendant had notice, brought suit against the defendant, and the plaintiff

was entitled to recover to the same extent as its assignor could, and no right of set-off or other defenses could be maintained by the defendant as against the plaintiff, as assignee, which were not valid and subsisting as against the plaintiff's assignor at the time defendant received notice of the assignment. *Salt Fork Coal Co. v. Eldridge Coal Co.*, 170 Ill. App. 268, 273. If there were "just set-offs, discounts and defenses" subsisting at that time as against plaintiff's assignor, the defendant was entitled to the benefit thereof.

Inasmuch as we have reached the conclusion that the trial court erred in striking out practically all of the evidence introduced by the defendant as being immaterial to the issues and entering judgment in the amount mentioned, and that the judgment should be reversed and the cause remanded for a new trial, we refrain from a discussion of the evidence and of the many points argued by counsel. We are of the opinion that at least certain portions of defendant's evidence, so stricken out, were material to the issues, and should have been considered by the court. We think, under the facts of this case that the evidence introduced by defendant tending to show certain general customs in the yellow pine lumber trade in the year 1909, as above mentioned in the statement of the case, was material to the issues and should have been considered by the court. We think that the rights of plaintiff, as assignee of the choses in action, would be affected by said customs to the same extent as would the rights of plaintiff's assignor. In *Guggenheim v. Hoffman*, 128 Ill. App. 289, 291, it is said: "While usages of trade cannot be set up to contravene established rules of law, or to vary the terms of an express contract, yet all contracts made in the ordinary course of business without particular stipulations, express or implied, are presumed to be made in reference to any existing usage or custom, relating to such trade; and persons dealing therein will be held as intending that

the business should be conducted according to such general usage and custom. *Chisholm v. Beaman Mach. Co.,* 160 Ill. 101; *Samuels v. Oliver,* 130 Ill. 73; *Lonorgan v. Stewart,* 55 Ill. 44.''

The judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*