GAIRDNER REALTY INVESTORS, LTD., Plaintiff-Appellant, *v.* DOVENMUEHLE, INC., Defendant-Appellee.

First District (1st Division)    No. 80-831

Opinion filed March 30, 1981.

John K. Kallman, of Rudnick & Wolfe, of Chicago, for appellant.

Harry Golter and Virginia A. Hoveman, both of Overton, Schwartz & Fritts, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Gairdner Realty Investors, Ltd. (plaintiff), brought this action against Dovenmuehle, Inc. (defendant), to recover a deposit which had been paid to defendant for a loan commitment. Defendant filed an amended counterclaim which plaintiff answered. Defendant withdrew certain defenses to plaintiff's claims. The trial court held that defendant was entitled to judgment on its amended counterclaim as a setoff against plaintiff's claim. Plaintiff has appealed.

Plaintiff is a mortgage broker doing business in Canada. In January 1976, Rocca Group, Ltd. (Rocca), also a Canadian firm, retained the services of plaintiff to obtain a first mortgage loan commitment. Plaintiff communicated with defendant. They agreed that defendant would attempt to obtain such a loan for a fee of 2 percent with one-half payable forthwith and the other half when the commitment was tendered. Rocca paid defendant $43,250 for the first-half payment. On February 4, 1976, Rocca and defendant entered into a written agreement for obtaining the loan and payment of a total standby deposit to defendant by Rocca of $86,500. The remaining sum of $43,250 was to be paid to defendant when the commitment had been obtained.

It appears from the briefs that plaintiff and Rocca have taken the position that it was the duty of defendant under the written contract to obtain the mortgage commitment within 30 days from the contract date. Quite to the contrary, defendant urges strongly that under the written contract the period for obtaining the commitment was 90 days. That issue was not decided by the trial court and has yet to be considered.

After the 30-day period had elapsed, Rocca demanded return of its standby deposit of $43,250 from defendant. Defendant rejected this demand. On May 4, 1976, Rocca gave plaintiff a written assignment of all of Rocca's rights under the mortgage loan application which included all rights to any refund of the standby deposit previously made by Rocca to defendant. On July 7, 1976, plaintiff filed this suit as assignee of Rocca

seeking recovery of the standby deposit. Plaintiff alleged defendant had persisted in its refusal to make the refund.

On April 1, 1977, defendant brought suit against Rocca only in the United States District Court for the Northern District of Illinois. Defendant claimed it was entitled to 90 days after it had received all pertinent information from Rocca within which to obtain the mortgage commitment. Defendant thus claimed an anticipatory breach of the contract by Rocca and sought recovery from Rocca of the balance of the standby payment in the sum of $43,250 plus interest and costs.

Rocca failed to appear in the Federal Court. On June 29, 1978, a default judgment was entered in that court in favor of defendant and against Rocca for $47,948.25 which included interest at the rate of 5 percent from April 26, 1976, to date of judgment.

In the trial court in the instant case, defendant stood upon its amended counterclaim. The theory of this counterclaim was that defendant was entitled to a final and conclusive setoff against plaintiff by virtue of the Federal Court judgment in favor of defendant and against Rocca. The trial court entered judgment in favor of plaintiff on count I of its complaint in the amount of $51,832.29. But the trial court also allowed a setoff in favor of defendant and against plaintiff for the full amount of the judgment in favor of defendant and against Rocca in the Federal Court.

It is plaintiff's contention that the Federal Court judgment in favor of defendant and against Rocca is not binding upon plaintiff because plaintiff was not a party to that suit and was not in privity with any party. Defendant contends the trial court's ruling was correct in that defendant had a valid setoff against plaintiff's claim as assignor predicated upon the Federal Court judgment.

The briefs before us are commendable for their brevity. Each party relies principally upon one decision. Defendant cites *Salt Fork Coal Co. v. Eldridge Coal Co.* (1912), 170 Ill. App. 268. There, Salt Fork sold coal to Eldridge under a written contract. Salt Fork assigned its contract rights to plaintiff bank. Thereafter, Salt Fork breached its contract. The bank, as assignee, contended Eldridge, as buyer, could not set off the breach of contract by Salt Fork against the amount due under the contract because the breach took place subsequent to the assignment. The trial court directed a verdict in favor of Eldridge and against the bank and the appellate court affirmed. The reviewing court pointed out that the amount which would become due to the bank depended upon whether or not Salt Fork as assignor continued to perform its contract. In addition, the bank received its assignment with full notice of the right of Eldridge to recoup in the event it suffered damages by reason of a breach of contract by Salt Fork. 170 Ill. App. 268, 274.

Defendant cites section 22(1) of the Civil Practice Act (Ill. Rev. Stat.

1979, ch. 110, par. 22(1)), with particular reliance upon the last sentence thereof:

> "The assignee and owner of a nonnegotiable chose in action may sue thereon in his own name. He shall in his pleadings on oath allege that he is the actual bona fide owner thereof, and set forth how and when he acquired title. The action is subject to any defense or setoff existing before notice of the assignment."

We find a distinction between *Salt Fork Coal* and the instant case. Defendant contends the above statute has reference to "any defense or setoff existing before notice of the assignment." Defendant seeks to apply this to any defense which defendant may have against the attempt to recover from defendant the sum of $43,250 paid by Rocca to defendant. We cannot agree with this interpretation. In our opinion, the cited statute is equally applicable to the claim existing in favor of Rocca, and now in favor of plaintiff as Rocca's assignee, to recover the sum of $43,250 from defendant.

This conclusion is based upon the fact defendant had full knowledge of the assignment shortly after it came into being. When the within suit was filed against defendant on July 7, 1976, some 9 months before defendant filed its own suit in the Federal Court, defendant had full knowledge of the assignment. The problem is that the dispositive issue between these litigants has never been decided. It is a prerequisite to a proper determination of the rights of these parties that each of them have their day in court so that the central question of who breached the written contract between them may be determined. In our opinion, this issue presents a mixed question of fact and law which should be litigated by these parties before considering the question of the setoff by virtue of the amended counterclaim.

Our position in this regard is most strongly supported by *Sweeting v. Campbell* (1954), 2 Ill. 2d 491, 119 N.E.2d 237, cited and depended upon by plaintiff. We note that each has not attempted to differentiate this case. Campbell signed a contract to purchase a certain piece of real estate from Sweeting. However, a title issue arose because Sweeting had created certain trusts which might possibly have affected the subject property. Sweeting filed suit for declaratory judgment in La Salle County against beneficiaries of the trust and Campbell. Campbell filed a counterclaim for specific performance of his contract. The beneficiaries of the trust filed a counterclaim to set aside the sale contract. Thereafter Sweeting filed suit in McLean County to acquire title to the property. The beneficiaries of the trust were named as defendants but Campbell was not made a party. The McLean court held that title to the property was in the trusts and not in Sweeting. The beneficiaries set up that judgment as binding when the matter came before the court in La Salle County. The

trial court depended on the McLean decision and dismissed Campbell's counterclaim. On Campbell's appeal, the supreme court reversed the judgment.

The supreme court specifically found that Campbell was neither a party to the McLean action nor in privity with any party. The supreme court defined privity as follows (2 Ill. 2d 491, 496-97):

> "Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of prior litigation. [Citations.] The interests of vendor and vendee can not here be said to be mutual. The effect of the contract for the sale of the land was to place the equitable title in the purchaser. [Citation.] And a clear distinction is drawn between a successor in interest and a predecessor in interest. While the former is bound the latter is not. As stated in *Orthwein v. Thomas* [(1889), 127 Ill. 554, 571, 21 N.E. 430], '* * * a privy to a judgment or decree is one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto. Freeman on Judgments (3rd ed.) sec. 162.' [Citations.] Since she acquired her interest in the property prior to the commencement of the action in McLean County, appellant [Campbell] was not in privity with any of the parties to that action."

In addition, also of prime importance, the supreme court commented upon the need to insure that every litigant should have his day in court. The court held (2 Ill. 2d 491, 498):

> "Under the conclusion which we have reached there is of course the possibility that upon an independent appraisal of the issues made by the pleadings and the evidence before it upon a new trial, the circuit court may reach a result inconsistent with, or contrary to, the result which was reached by the circuit court of McLean County. That possibility, however, stems from the importance which our legal system attaches to the overriding principle that every litigant shall have his day in court. It cannot be avoided without impairment of that principle."

In view of our interpretation of these authorities, we conclude the judgment permitting setoff on the amended counterclaim filed by defendant should be reversed and the cause remanded for trial. We note also that defendant should be permitted to replead the defenses originally stated in its answer which were supplanted by the amended counterclaim.

The judgment appealed from is accordingly reversed and the cause remanded for trial.

Judgment reversed; cause remanded for a trial.

O'CONNOR and CAMPBELL, JJ., concur.